HUGHES *v.* STATE OF INDIANA.
[No. 26,848. Filed October 26, 1937.]

*Ed. L. Siebold* and *Eichhorn, Gordon & Edris,* for appellant.

*Omer S. Jackson,* Attorney-General, and *Glen L. Steckley,* Deputy Attorney-General, for the State.

FANSLER, C. J.—Appellant was convicted of assault and battery and fined $100 pursuant to the verdict of the jury.

Prosecution was begun in the city court of Fort Wayne. There was an appeal from a conviction to the circuit court. The prosecution was based upon an affidavit which, omitting the caption and signatures, is as follows:

> "William Todd swears that George W. Hughes and Mattie C. Hughes, on the — day of August, A. D. 1936, at the County of Allen and in the State of Indiana, did then and there in a rude, insolent and angry manner unlawfully touch, beat and strike the person of one William Todd and Maud Todd.

"Then and there being contrary to the form of the Statute in such case made and provided."

The first error assigned is upon the overruling of appellant's motion to quash the affidavit.

It is contended by appellant that the affidavit charges four separate offenses, i.e., a separate assault and battery by each of the defendants upon William Todd and upon Maud Todd. The jury was instructed, however, that to justify a conviction the evidence must show "that the defendant George W. Hughes committed an assault and battery upon the person of both of the Todds." Why a like instruction was not given in respect to Mattie C. Hughes does not appear. No reason is seen why a different rule should apply to her.

There are cases which hold that a criminal charge is not bad for duplicity because based upon an injury to two persons, if the injuries were caused by a single act of the defendant. Among them are cases involving the cutting down and carrying away of growing trees from two tracts of land, the property of different persons, where the cutting was a single transaction; the larceny of money and other property, belonging in part to two different persons. *Brogan* v. *State* (1927), 199 Ind. 203, 156 N. E. 515. It is said in *Knopf* v. *State* (1882), 84 Ind. 316, 324: "When several acts relate to the same transaction, and together constitute but one offense, they may be charged in the same count, but not otherwise." In *Commonwealth* v. *O'Brien et al.* (1871), 107 Mass. 208, there was an indictment charging an assault and battery upon two persons. The defendants asked an instruction to the effect that if the assault was upon one only the jury must acquit, but the trial judge refused to so instruct. It was held to be well settled that "a man who assaults two persons at the same time may be charged in a single count with the assault upon both as one breach of the

peace," and that a conviction is supported by proof of an assault upon either, upon the theory that it is enough to prove so much of the indictment as shows that the defendant has committed the substantive crime therein specified, although he is not guilty of all that is charged against him. This is consistent with all of the cases, if it is assumed that the assault charged to have been committed upon the two was accomplished by a single act. The question of whether the indictment must show that it was a single act is not discussed. In *Kenney* v. *State* (1858), 5 R. I. 385, 387, the court had under consideration an indictment charging an assault upon two persons. In sustaining the indictment, the court said in reference to *Rex* v. *Benfield* (1760), 2 Burr. 983, 984: "The precise point decided in this case was, that an information charging a libel upon two *might* be supported; and if so, there seems to be no reason why the charge of an assault upon two may not, provided, which we are bound to presume upon such an application as this, the proof correspond with the charge." Concerning a similar indictment, the Supreme Court of Michigan, in *People* v. *Ellsworth et al.* (1892), 90 Mich. 442, 446, said: "It must be conceded that it would be possible for a person to commit murder, and kill more than one person, by one and the same act; for instance, by putting poison in an article of food used by several, or by shooting two persons by one discharge of a loaded gun. It would also be possible to make an assault with intent to do great bodily harm, less than the crime of murder, upon two persons at once, and by the same act or acts. In such case, it is admissible to inform against one or more persons for such assault upon two persons. . . . None of the testimony taken on the trial is returned in the record, and therefore we must presume that the evidence showed that the assault upon the two persons was one and the same transaction." In *Woodford* v. *People of*

*the State of New York* (1875), 62 N. Y. 117, 127, 130, one person was indicted for burning a number of designated dwelling houses by a single act. It is said in the opinion: "For aught that appears in the indictment these houses were all in a block or row, and all connected together, and if not that they were so situated that the firing of one would naturally if not necessarily burn and destroy the others, or at all events that the fire was communicated to all from a single setting. They are charged to have been burned by a single act of firing and burning. A conviction upon separate indictments could not be had for each separate house, although an indictment may have been good for any one, and a conviction or acquittal upon such an indictment would be a bar to an indictment for burning any other house burned by the same act. These consequences must follow from the position that there was but one crime committed in respect to all the dwelling-houses, and that the respective counts charge but one crime." In the opinion, the case of *Rex* v. *Benfield, supra,* is interpreted as only justifying "an indictment for all the consequences of a single act." In *Clem* v. *State* (1873), 42 Ind. 420, it is held that if a person assaults and kills two persons with a single shot, or with a single blow of an instrument, so that the injury to both results from one indivisible act, it is one offense against the state, and a conviction of having murdered one will bar a prosecution for the murder of the other. In *Joslyn* v. *State* (1891), 128 Ind. 160, 27 N. E. 492, the court considered an information in one count charging a larceny of the property of two persons. In holding the information bad for duplicity, the court recognized that there may be cases where the larceny of property belonging to different persons may constitute a single offense, "as, for instance, where it (the property) is all in one bundle or in one package, . . . as in such a case there is a single and indivis-

ible act, and it may be a single crime." But the information did not allege facts showing that the property of both persons was stolen under circumstances which would show that it constituted but one act and one larceny. It is pointed out that every larceny is a trespass against the owner, and that, where there is a charge of a trespass against two, the implication is that the trespasses were separate and distinct, and that, there being no allegations of fact negativing this implication, the indictment was bad for duplicity. This case seems decisive of the questions here presented. It will be noted that some of the cases from foreign jurisdictions above referred to hold that an indictment is good charging crimes against two persons, upon the theory that the evidence *might* establish that the injuries were the result of a single act. The result under such a rule must be a trial in every case and a ruling that evidence is insufficient to sustain a conviction unless it shows that the resulting injuries were the result of one indivisible act. It would seem that the better rule is that laid down in the Joslyn case, which assumes prima facie that injuries to two persons are distinct offenses, and that, unless facts are alleged showing the injuries to be but a single offense, such a count will be held bad for duplicity. The Joslyn case seems to have established the rule as the law in this state, and no reason is seen for departing from it. The court erred in overruling the motion to quash.

An examination of the evidence discloses that the acts relied upon as establishing assault and battery upon the two persons named were separate and distinct. The defendants, husband and wife, and those against whom the assault and battery is charged to have been committed, also husband and wife, engaged in a conflict concerning a fence. It began with an encounter between Mrs. Hughes and William Todd, in

which blows seem to have been struck by both. George Hughes rushed to his wife's assistance, and engaged in a separate conflict with Todd, in which they clinched and fell to the ground. Todd called to his wife for assistance. Mrs. Todd testified that as she approached the scene, Mrs. Hughes struck her with a board from the fence, although Mrs. Hughes said she struck her with her fist. Afterwards, Mrs. Hughes approached her husband and Todd, where they were clinched upon the ground, and seems to have struck them both indiscriminately with a board. She said that her glasses were broken in the encounter with Todd and that she could not see. Her husband shouted for her not to hit him, and Todd says he was struck by the board. If the affidavit had alleged that the assault and battery upon each of the persons charged to have been injured was the result of a single act, so that it would be good under the rule laid down in the Joslyn case, the evidence referred to would not support it. If there had been four separate offenses charged, in four separate affidavits, i. e., that George Hughes was guilty of an assault and battery upon William Todd, that he was guilty of an assault and battery upon Maud Todd, and that Mattie C. Hughes was guilty of an assault and battery upon William Todd, and that she was guilty of an assault and battery upon Maud Todd, an acquittal upon one such affidavit, upon the evidence referred to, would not bar a prosecution upon the others, upon the theory that they were all but one offense; and it must be concluded, upon the reasoning of all the cases referred to, that the facts show separate offenses, if any.

The state contends that the bills of exceptions containing the evidence and the instructions are not in the record. It is asserted that: "To bring a bill of exceptions containing the evidence into the record it must affirmatively appear from an order

book entry that the bill of exceptions was presented to and approved by the judge and was filed with the clerk after such approval." *Rogers* v. *State* (1937), 211 Ind. 47, 5 N. E. (2d) 509, 510, is relied upon to support this view. That case merely holds that it must appear by the record that the bill was filed with the clerk after it was signed by the judge; the record referred to being the transcript filed in this court. It is not required that an order book entry show that the bill was presented to and approved by the judge. It may be presented to and approved by the judge in vacation, and filed with the clerk in vacation, or filed in open court. The bills of exceptions disclose their presentation and approval by the judge, and that they were signed by the judge, and upon the same day there is an order book entry showing that they were filed in open court. In *Martin* v. *State* (1897), 148 Ind. 519, 47 N. E. 930, it is held that where the entry shows the filing of a bill of exceptions, and the bill so filed discloses that it was tendered to and signed by the judge on the same day, it is sufficient. The bills of exceptions are properly in the record.

Both of the Todds were witnesses. Upon cross-examination they were asked whether they had a damage suit pending against the defendants. An objection was sustained. This was error. Upon cross-examination it is proper to develop any fact which tends to show interest, bias, or prejudice upon the part of the witness. Interest, bias, or prejudice, or antagonism is entitled to be considered by the jury as affecting the credibility of a witness. It is true that trial courts have some discretion as to the extent of the cross-examination, but this discretion may be exercised in controlling the length to which subjects may be developed, and not the subject-matter that may be gone into.

The following instruction was given: "The court further instructs you that mere threats on the part of the

complaining witness directed towards the defendants would not of themselves be sufficient to justify an attack by the defendants upon the complaining witness on the theory of self-defense. Before the defendants could be justified in assaulting the complaining witness, if you find beyond a reasonable doubt they did, upon the theory of self-defense, it was necessary that said defendants be violently assaulted, mere threats to assault or sportive or indifferent efforts at assault by the complaining witness not being sufficient." This instruction is said to have been given upon authority of *Isabel* v. *State* (1929), 90 Ind. App. 131, 133, 166 N. E. 304, where it is said: "Criticism is made of the statement: 'That, before a person may exercise the right of self-defense, he must first be violently assaulted.' It is admitted by the appellant that said instruction No. 8, as given by the court, was approved in the case of *Smith* v. *State* (1895), 142 Ind. 288, 41 N. E. 595. . . ." But such an instruction was not approved in *Smith* v. *State*. We quote from the instruction there approved (p. 296): "Where a person being without fault, and is in a place where he has a right to be, so far as his assailant is concerned, is violently assaulted, he may, without retreating, repel force by force. . . ." There is a vast difference between saying that when one is violently assaulted he may defend himself, and saying he may not defend himself unless he is violently assaulted. The statement in *Isabel* v. *State, supra,* seems to have been made by the court under a misapprehension because of an admission by appellant concerning *Smith* v. *State,* which is not borne out by an examination of the case, and, for that reason, *Isabel* v. *State* should not be considered an authority upon the question.

The instruction is erroneous for several reasons. It is not necessary that a person be violently assaulted, or

assaulted at all, before he has the right to defend himself. A person has a right to act on appearance, and if he believes, in good faith and upon reasonable grounds, from the facts and circumstances as they appear to him at the time, that he is about to be assaulted, he has a right, if it seems reasonably necessary to him at the time, to use such force as will protect him from the assault. The word "assault" implies force, and in one sense the term "violently" also implies force, but, in connection with the word "assault," which also implies force, it generally implies great force. One may defend himself against any assault. "Violently" may imply great or extreme force. A violent presumption is something more than a mere presumption; a violent storm, more than an ordinary storm; a violent attack, more than an ordinary attack. *State* v. *Miller* (1926), 141 Wash. 104, 250 Pac. 645. In the first part of the instruction it is said that mere threats to assault are not sufficient to justify self-defense, and the last words of the instruction are, "mere threats to assault or sportive or indifferent efforts at assault by the complaining witness not being sufficient." It is true that threats of themselves are not sufficient, but a threat at a time when there is present ability to assault, and under circumstances which lead the defendant in good faith reasonably to believe that he is about to be assaulted and injured, is sufficient. If the word "indifferent" is used as synonymous with apathetic or heedless, unimportant or poorly executed, efforts at assault, the instruction is on dangerous ground. The defendant, under necessity of determining at once whether it was necessary to defend himself, had a right to act on appearances, and we know of no rule of law which distinguishes between a well and a poorly executed assault in determining the right to self-defense. The use of the word "sportive" at best may be highly misleading. As Webster defines it, it may

mean frolicsome or playful, or it may also mean amorous, wanton, or lecherous. If the defendant at the time reasonably and honestly believed that she was in danger, she had a right to defend herself, and to use such force as seemed reasonably necessary for her protection, regardless of whether the jury should afterwards determine that she was violently assaulted, or that her assailant had no actual intention of assaulting her, and regardless of the motive or quality of the assault. The instruction as given is erroneous and prejudicial.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, to permit appellant to withdraw her plea, and to sustain appellant's motion to quash the affidavit.