CULP *v.* STATE OF INDIANA.

[No. 27,891. Filed January 19, 1944.]

204

*Frank E. Martindale* and *Albert B. Chipman,* both of Plymouth, for appellant.

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Assistant Attorney General, and *Frank E. Coughlin,* Deputy Attorney General, for the State.

RICHMAN, J.—Appellant was convicted of involuntary manslaughter and assigns error in the overruling of his motion for new trial. After some name calling in a tavern in Plymouth, Indiana, decedent followed appellant to an adjoining area, paved with concrete, where a physical encounter ensued. In a few minutes the proprietor of the tavern went to the scene of the encounter and found decedent lying on the pavement and appellant standing near. Appellant said, "I hit him but I guess I hit him a little too hard." A passerby testified that appellant also said, "He needed hitting and, by God, I hit him." Appellant re-entered the tavern and told a waiter, "There has been an accident out there, somebody has been hurt or maybe I killed somebody." Later in the day appellant made a similar statement to another witness at a different tavern. A surgeon testified that the decedent had a fractured skull from which he died three days later. Appellant was the only witness who described the encounter. He testified that both he and decedent took off their coats,

and that he stood as decedent slowly approached and seized appellant about the neck, that the hold was broken by a sudden move, appellant's right shoulder struck decedent's chest and he fell to the concrete.

Errors are assigned in the giving of the State's tendered instructions 2, 9, and 10; the refusal of appellant's instructions 4, 13, 21, 24, 26 and 30; and the refusal of the court to permit a new trial on account of newly discovered evidence.

Instruction 2 discloses the theory upon which the verdict was evidently based. It states:

"That where one does an act forbidden by law, which unintentionally causes the death of another, it comes within the defination of involuntary Manslaughter. An unlawful assault and battery upon a person without a purpose to kill, and death results, such person is guilty of Manslaughter. So in this case if you believe from all the evidence and beyond a reasonable doubt that the Defendent Milo Culp unlawfully assaulted the deceased Leonard (Pet) Myers, and that as a result of said assualt said Leonard (Pet) Myers was knocked or beaten to the ground and that wounds resulted from which he died, all as charged in the Affidavit then you should find him guilty of Involuntary Manslaughter."

The written objection thereto, made in compliance with Rule 1-7, is:

"It absolutely ignores the defense of self-defense and the instruction says you should find him guilty. Mandatory in character instead of saying 'if you so find.' "

Appellant relies chiefly upon *Hunter* v. *State* (1884), 101 Ind. 241, where an instruction was held erroneous in that it undertook to detail facts in evidence upon which the jury was required by the instruction to con-

vict defendant but omitted certain other facts in evidence which raised the question of self-defense. The instruction before us is not of that character. It is general in terms and does not undertake to detail the evidentiary facts. While it might have been more carefully phrased, we think it states the law. If the word "unlawfully" in the third sentence thereof had been omitted, we would have a different question. An assault and battery is not unlawful if committed in self-defense.

Instruction 9 referred to the method of proving the "*corpus delicti.*" Appellant objected because the instruction did not define "*corpus delicti,*" but he tendered no instruction containing such definition and for that reason cannot now complain. *Reynolds* v. *The State* (1897), 147 Ind. 3, 46 N. E. 31. His objection to instruction 10 was that it is "unintelligible." It reads:

". . . the cause and manner of death are always relevant in a prosecution of Homicide. The cause of the death may be proved by circumstantial evidence. If the corpus delicti is proved, it is not necessary to show the particular manner in which the killing occurred."

While the language is somewhat technical it is perfectly intelligible. If appellant thought that the words used required explanation to the jury he should have tendered an instruction containing such explanation. Instructions should, so far as possible, be couched in language familiar to laymen. If an instruction is unintelligible it is not informative but not necessarily misleading. This one was not harmful.

Appellant's instruction 4 would have informed the jurors that they could not find him guilty unless each

of them had a "conscientious conviction that there is no reasonable doubt of the defendant's guilt as charged." Of its own motion the court gave an instruction on reasonable doubt the last sentence of which reads:

"Each individual mind is to arrive at the conclusion separately and each juror, having in view the oath taken, and the responsibility thereunder, should have his mind convinced beyond a reasonable doubt from all the evidence in the cause, before such juror can consistently consent to a verdict of guilty."

We think this sufficiently covers the subject of appellant's tendered instruction.

The court refused to give instruction 13, reading:

"The defendant has testified as a witness in this case and you should weigh his testimony as you weigh that of any other witness."

But the court of its own motion gave a general instruction upon the method of determining the credibility of the witnesses and the weight to be given their testimony. It applies specifically to "each and every witness," which would include the appellant. In view of this instruction the jury would not be warranted in assuming that a defendant's testimony should be weighed any differently from the testimony of any other witness. There was, therefore, no reason for calling particular attention to his testimony and the instruction was properly refused.

Appellant's instructions 21, 24 and 30 are on the subject of self-defense. We think this subject was adequately covered by appellant's instructions 25 and 23, both of which were given. Besides, numbers 21 and 24 were argumentative and 30

contained a sentence invading the province of the jury. We fail to find in either of these tendered instructions any substantial proposition that was not covered by the instructions given.

Instruction 26 dealt with the subject of circumstantial evidence. There was ample direct evidence upon which the jury could have arrived at its verdict. There were also corroborating circumstances. In *Wolfe* v. *State* (1928), 200 Ind. 557, 567, 159 N. E. 545, quoting the texts of three authors of works on instructions to juries and numerous cases including *Moore* v. *State* (1926), 198 Ind. 547, 153 N. E. 402, the court said that where there is direct evidence to prove the crime an instruction on circumstantial evidence is not necessary and is properly refused. The Moore case so held.

The principles applicable to the granting of a new trial because of newly discovered evidence have recently been stated in *Bowling* v. *State* (1942), 220 Ind. 497, 44 N. E. (2d) 171, and need not be repeated. In that case there was no bill of exceptions. In the case at bar there is a bill of exceptions but it does not show that the affidavits relied upon were introduced in evidence nor that all of the evidence heard by the trial court on the issue is contained in the bill of exceptions. It does show that the appellant was in court and offered as a witness at the time the motion for new trial was argued but "That such opportunity of interrogation was declined by both the Court and the Prosecuting Attorney." It also shows that "No counter affidavits or showing of any kind with respect to the affidavits above mentioned were filed by the State of Indiana." This does not exclude the possibility that the court heard the testimony of other witnesses than those produced by the State. Assuming, however, that

the record is sufficient to present the question the evidence was cumulative and we are not able to say that it was of such a character that if admitted in a new trial it probably would produce a different result. Appellant stresses the fact that the newly discovered evidence would disclose that a bystander "saw Leonard Myers fall" after the hold on appellant's neck had been broken and that he is the only witness who would so testify. We cannot see that this is any substantial contribution to appellant's own testimony.

Other errors were assigned in the motion for new trial but are not discussed in appellant's brief and are therefore waived.

Finding no reversible error the judgment is affirmed.

NOTE.—Reported in 52 N. E. (2d) 486.