JOHNNIE ERNEST JOHNSON v. STATE OF INDIANA.

[No. 770S172. Filed July 8, 1971.]

*Al S. Woolbert,* of Anderson, *Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Frank Hanley,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant was charged by indictment with the offense of involuntary manslaughter. Upon a plea of not guilty, appellant was tried in the Madison County Circuit Court before a jury and found guilty of simple assault. Pursuant to such verdict appellant was fined two hundred fifty dollars [$250] and sentenced to imprisonment in the Madison County Jail for a period of ninety [90] days.

There were several eye-witnesses to the alleged offense and the facts surrounding the incident are substantially without conflict. On April 6, 1968, sometime between 11:30 and 12:00 A.M., Clifford Moore entered the Club House Bar located in Anderson, Indiana. The appellant was tending bar at the time; also present were appellant's wife, the registered owner of the bar, and several other customers. Moore joined one of the customers sitting at the bar and they apparently bought each other drinks; it also appears that Moore bought two or three rounds for the house.

When Moore ordered yet another round of drinks for the house, appellant refused to set them up, stating that the customers all still had unfinished drinks in front of them. Upon this refusal, Moore began to complain with abusive and extremely vulgar language, directing his comments not only to appellant but to appellant's wife who was nearby. Appellant attempted to quiet Moore, reminding him that ladies were present and that if he did not refrain from the use of such language he would have to leave. At this point Moore reached behind the bar in an apparent attempt to grab appellant but was pushed back to his bar stool. Moore then grabbed a beer

bottle sitting on the bar and swung at appellant; in an attempt to escape the blow, appellant reeled backward and simultaneously grabbed a wooden stick-like club from under the bar which he used to strike Moore.

It is not clear as to where appellant struck Moore but the club flew from his hand across the room. Appellant immediately moved from behind the bar to retrieve the club while Moore broke the beer bottle across the edge of the bar. Moore continued to advance with the broken beer bottle in his upraised hand. Appellant picked up the club and struck Moore in the head, causing him to fall to the floor. Appellant then dragged Moore to the street in front of the tavern and instructed his wife to call the police and an ambulance. Moore was taken to the hospital where he died several days later from the head injury.

Essentially appellant argues only that the evidence presented was insufficient to sustain the jury's verdict of assault. Specifically he would argue that the undisputed evidence indicates his actions were lawful in that he was merely attempting to defend himself from Moore's apparent attack on his person. The state, on the other hand, argues that the statutory elements of assault have been proven beyond a reasonable doubt and that the verdict must be upheld.

Simple assault is defined at Ind. Ann. Stat. § 10-402 (1956 Repl.) as follows:

> "Whoever, having the present ability to do so, attempts to commit a violent injury upon the person of another, is guilty of an assault, . . ."

Whether appellant attempted to commit a violent injury upon the person of Moore, however, cannot be determined in a factual vacuum. The evidence is undisputed that appellant exercised commendable restraint in his encounter with Moore and resorted to force only upon being physically assaulted. That one is entitled to defend himself in circumstances where it reasonably appears that he is in danger of

bodily harm has long been the law. *Culp* v. *State* (1944), 222 Ind. 202, 52 N. E. 2d 486; *Hughes* v. *State* (1937), 212 Ind. 577, 10 N. E. 2d 629; *Duncan* v. *State* (1882), 84 Ind. 204. Further, as we said in *Hughes* v. *State, supra:*

> "It is not necessary that a person be violently assaulted, or assaulted at all, before he has the right to defend himself. A person has a right to act on appearance, and if he ■ believes, in good faith and upon reasonable grounds, from the facts and circumstances as they appear to him at the time, that he is about to be assaulted, he has a right, if it seems reasonably necessary to him at the time, to use such force as will protect him from the assault." 212 Ind. at 585-86, 10 N. E. 2d at 633.

It is the circumstances existing at the time which must be focused upon and the reasonableness with which the ■ defendant reacted to such circumstances. As was said in *Heglin* v. *State* (1956), 236 Ind. 350, 140 N. E. 2d 98:

> "A man has a right to act upon appearances of actual and immediate danger, if he sincerely believes such apparent danger exists. The danger need not be actual. It need be only apparent to a reasonable person under the circumstances. The law protects persons who feel compelled to act at such times even though in retrospect it is proved they have erred. The law takes into consideration the surrounding circumstances under which the events took place." 236 Ind. at 353, 140 N. E. 2d at 99.

Our case law in Indiana recognizes the right of every citizen to reasonably defend himself against unwarranted attack. Therefore self-defense in homicide and assault cases must remain a viable rule and when such defense is asserted and supported by the evidence it may not be casually thrust aside by the jury. Hence the burden was upon the State to negate the element of self-defense by substantial evidence of probative value.

It is abundantly clear that the circumstances in this case were of such a nature as to justify appellant's striking of Moore, he clearly having done so in the defense of his person.

Moore had had several drinks and had begun to use abusive and insulting language upon appellant's refusal to serve the house another round of drinks. Appellant requested him to cease, but Moore refused to do so and swung at appellant with a beer bottle. During the ensuing altercation Moore broke the beer bottle on the edge of the bar and continued his assault on appellant; in repelling the attack, appellant hit Moore on the head with a stick-like club. Under these circumstances, there was insufficient evidence as a matter of law upon which to sustain a verdict of simple assault against appellant beyond a reasonable doubt and we so hold.

For the foregoing reasons the judgment of the trial court must be reversed and appellant is ordered discharged.

Judgment reversed; discharge ordered.

Arterburn, C.J., Givan and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

### Dissenting Opinion

DeBruler, J.—I agree with the majority opinion that if the evidence and the reasonable inferences therefrom were without conflict and led to but one conclusion and the jury reached the opposite conclusion we should reverse the verdict as contrary to law. *Byassee* v. *State* (1968), 251 Ind. 114, 239 N. E. 2d 586; *Compton* v. *State* (1968), 250 Ind. 103, 235 N. E. 2d 181; *Gunder* v. *State* (1968), 250 Ind. 689, 238 N. E. 2d 655; *Heglin* v. *State* (1956), 236 Ind. 350, 140 N. E. 2d 98; *State* v. *Kubiak* (1936), 210 Ind. 479, 4 N. E. 2d 193. However, I think a reasonable inference from the evidence supports the jury verdict and, therefore, the verdict should be affirmed.

The crucial question is what occurred after the appellant came out from behind the bar and retrieved his club. If the appellant after retrieving the club was not in any apparent danger of assault from the victim but, on the contrary, the appellant became the aggressor at that point, then appellant was not acting in self-defense, regardless of what occurred earlier between the two men. *Heglin* v. *State, supra.* There-

fore, the issue in this case is whether the evidence and reasonable inferences therefrom are without conflict and show, as appellant claims, that the victim was advancing on appellant with a broken beer bottle in his hand.

The appellee presented four witnesses in its case-in-chief, who were in the tavern at or around the time of the incident. Not one of them testified that they saw victim with a broken beer bottle advancing on the appellant. One of the four witnesses, Ralph Wasson, testified that he was not present when any fighting took place. He did see the victim reach across the bar with his hand after the appellant but he did not think either the appellant or the victim was angry at that point. Lee Rouse was in the tavern and testified that he heard the victim cursing and arguing with the appellant. He saw the victim twice reach across the bar with his hand to grab at appellant and he also saw the victim then reach over the bar with a beer bottle in his hand. At the same time he saw the victim reach across the bar with a bottle in his hand he saw appellant hit the victim with a club he had in his hand. Appellant lost control of the club and it went flying across the room. This witness did not see, and could not testify concerning, the events which occurred after appellant came out from behind the bar and retrieved his club. He testified that he could not swear that the bottle was broken or whole but he did not hear the tinkle of broken glass until after the fight was over when appellant's wife was sweeping a broken bottle up off the floor.

Ruby Crumbaugh was sitting in the tavern drinking and saw appellant reach across the bar with a beer bottle in his hand. She stated the beer bottle was broken at that time but this is inconsistent with the majority view that the victim broke the beer bottle as appellant was coming out from behind the bar. This witness did not know what happened after the appellant came out from behind the bar because she did not see the incident.

Of the first three "eye-witnesses" not one even saw the events which occurred after appellant came out from behind

the bar. Alvin Rouse, Lee Rouse's son, was also in the tavern drinking at the bar. He heard the commotion and he looked down the bar and saw the victim reach over the bar after the appellant. Then he did not see anything else until he saw the appellant come out from behind the bar. He testified that the victim was standing by the jukebox with a beer bottle in his hand like he was going to hit appellant and "appellant *came up to him* and appellant swung first." (Emphasis added.) This witness testified that he could not say that the bottle was broken when the victim had hold of it. Therefore, of the State's four witnesses who were in the tavern near or about the time of the incident not one testified that they saw the victim with a broken beer bottle in his hand advancing toward the appellant. On the contrary, Alvin Rouse's testimony implies that the appellant walked up to the victim and hit him first with the club.

The appellant and his wife were the only two eye-witnesses who testified for the appellant and due to the obvious potential bias of these two witnesses the jury was not required to believe their version of the events surrounding the killing. Even these two witnesses provide evidence which supports the jury verdict. Appellant's pre-trial statement admitted in evidence as Ex. A, said in part:

> "I told Whitey that he was going to have to leave and he grabbed a bottle from the bar and swung it at me. I backed up when he swung at me and he then set down and I thought that it was all over. Whitey kept calling me a dirty rotten mother-fucker and picked up the bottle and swung at me again. I then pulled a club from behind the bar and hit Whitey in the head with it. The club flew out of my hands and over into the barroom. Whitey started to get up and I went around the bar and picked up the club and hit him in the head again with it. He was knocked out at this time.
>
> "After I had hit Whitey the first time, it did not knock him down. He was still on his feet and was standing with the bottle in his hand when I hit him the second time."

This statement given the day after the incident and before the victim had died, does *not* say that the victim was advancing

on appellant with a broken beer bottle. The wife at one point testified as follows:

"Q. After appellant came out from behind the bar did Moore stay still or did he move?
A. No, he moved.
Q. Where did he move, in what direction?
A. Well he moved at first I think he backed up just a little bit. I don't know if this was before he got hit that he backed up or whether he backed up after he got hit."

There was also evidence that appellant and the victim had been in a fight once before and that the appellant had a reputation for being willing to fight.

It seems clear that on this evidence the jury could reasonably have found that: the victim's behavior in the tavern angered appellant and when the victim swung a beer bottle at appellant, appellant hit him with a club, losing the club in the process. After he came out from behind the bar and retrieved the club appellant became the aggressor and walked over to the victim who had a bottle in his hand, but was not advancing on the appellant, and appellant hit him in the head with the club. This single blow, either because the club was an especially lethal weapon or because of the ferocity of the blow, fractured the victim's skull and as a result of the injury the victim died.

The crucial issue in the case is whether the evidence would permit a reasonable inference that the appellant at the time he hit the victim did not perceive that he was in any danger and was in fact the aggressor. I think the evidence and the reasonable inferences therefrom are in substantial enough conflict to preclude this Court from disturbing the jury verdict.

Note.—Reported in 271 N. E. 2d 123.