LEO ANDERSON *v*. STATE OF INDIANA.

[No. 1-972A67.  Filed January 24, 1973.]

*James W. Pendland,* of Mitchell, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellee.

ROBERTSON, P.J.—The defendant-appellant (Anderson) is appealing his conviction, after a bench trial, of Aggravated Assault and Battery. The two issues raised by Anderson in his motion to correct errors are that there was not sufficient evidence to prove an essential element of the offense, and that he was denied counsel at critical stages of the proceedings.

A conviction must be affirmed if there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Gann* v. *State* (1971), 256 Ind. 429, 269 N.E.2d 381; *Asher* v. *State* (1969), 253 Ind. 25, 244 N.E.2d 89.

The court will not weigh the evidence nor resolve the questions of credibility, but will look to the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict of the jury. *Washington* v. *State* (1971), 257 Ind. 40, 271 N.E.2d 888; *Davis* v. *State* (1971), 257 Ind. 46, 271 N.E.2d 893.

Anderson contends there was not sufficient evidence to show that he "intentionally or knowingly and unlawfully inflict[ed]

great bodily harm or disfigurement upon another," as required by IC 35-13-3-1, Ind. Ann. Stat. § 10-410 (Burns 1972).

The facts show that Cundiff, his wife, his aunt, and two other women were sitting at one end of three square tables pushed together at Cheebie's Tavern in Mitchell, Indiana. Anderson and a lady were sitting at the other end of the table. Cundiff and his friends were laughing and generally having a good time. Anderson twice inquired of Cundiff if they were laughing at him. Cundiff responded in the negative both times. When Cundiff stood up to depart Anderson struck Cundiff with his fist. There was evidence to show that Anderson struck Cundiff as many as five times, several of the blows being struck while Cundiff was lying on the floor. There was no evidence to show that Cundiff initiated the encounter, struck Anderson, or was able to resist the assault.

One of Cundiff's physicians answered the Prosecutor's questions thusly:

"Q. Would you describe what you had to do to repair this injury to Mr. Cundiff?
A. Well, this injury was extensive and Mr. Cundiff has to be put to sleep, to repair this injury. I opened him up on the creek bone, right below the eye, and on the side of the head, in order to insert an instrument to pry the bone upward so that to be in alignment with the other broken fragment and to stabilize this I had to take hold of both bones and wire it together.
Q. You did cut into him and then you had to stitch that up too, is that correct?
A. Yes. He has to be stitched in the area where I went through on the cheek and on the side of the head.
Q. Was that the extent of your treatment to Mr. Cundiff?
A. Yes sir."

Cudiff was hospitalized four days.

We are of the opinion there was sufficient evidence to show great bodily harm.

"*Great bodily harm* defines itself and *means great* as distinguished from *slight, trivial, minor* or *moderate harm,*

> and as such *does not include mere bruises as are likely to be inflicted* in a simple assault and battery under Ind. Ann. Stat. § 10-403 (Supp. 1967). Whether the evidence describing such harm or injury is within the meaning of the statute, Ind. Ann. Stat. § 10-410 (Supp. 1967), is generally a *question of fact for the jury.* See e.g. *Hallet* v. *State* (1922), 109 Neb. 311, 190 N.W. 862." *Froedge* v. *State* (1968), 249 Ind. 438, 233 N.E.2d 631, at 636.

We are of the further opinion that the evidence reflected the necessary intent. The trier of fact could infer from the evidence that Anderson initiated the affray and that he continued hitting Cundiff in the absence of resistance.

The same facts also belie Anderson's self-defense contentions.

Anderson's second contention, that he was denied counsel at a critical stage of the proceedings, is unfounded. The alleged critical stage was at a preliminary hearing. At that hearing, Anderson's first appearance in the Lawrence Circuit Court, he requested and received additional time to obtain counsel. Counsel did appear with Anderson at his arraignment when he entered his plea of not guilty. The case of *Fulks* v. *State* (1970), 255 Ind. 81, 262 N.E.2d 651, held:

> "From this record we fail to see any violation of the safeguard of representation of the appellant by counsel in view of the fact that it is a judicial function to determine whether counsel shall be appointed at public expense. It is most unrealistic to say that when an accused is first arrested and informs a police officer he would like to be represented by counsel that it would then be a denial of his constitutional rights to bring him before a magistrate for preliminary hearing or before a court having felony jurisdiction, unless he be accompanied by an attorney. If he is in fact indigent, he must enter the court room in order to obtain counsel. If, as in the appellant's case, he is able at that time to employ private counsel, he, of course, is free to do so prior to entering court. Certainly, the State cannot be required to furnish counsel before the appellant appears before the court having jurisdiction to provide the same. We hold the constitutional provision providing for counsel is fully complied with, if the court having

jurisdiction responds immediately upon application of an accused and the proof of his indigency." 262 N.E.2d, at 653.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.