CLIFFORD BONDS *v.* STATE OF INDIANA.

[No. 3-273A13. Filed November 27, 1973. Rehearing denied December 28, 1973. Transfer denied March 1, 1974.]

*Sam Mirkin,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

## I.

## STATEMENT ON THE APPEAL

STATON, J.—Clifford Bonds shot John Thorpe. Prior to the shooting, Thorpe had given Bonds Twenty Dollars ($20.00) which was to be delivered to Zack Cotton. Bonds failed to deliver the Twenty Dollars ($20.00). Thorpe had a heated discussion with Bonds at a service station about his failure to deliver the Twenty Dollars ($20.00). Later, he followed Bonds to the intersection of Sample and Chapin Streets in South Bend, Indiana where a second heated discussion ended with Bonds walking to the rear of his car, taking his shotgun out of the trunk and shooting Thorpe.

An affidavit charged Bonds with assault and battery with intent to kill.[1] Bonds waived formal arraignment and entered his plea of not guilty. A jury found Bonds guilty of the lesser includable offense of aggravated assault and battery.[2] He was sentenced by the trial court to one (1) to five (5) years. His motion to correct errors raises these issues for our consideration on appeal:

ISSUE ONE: Was there sufficient evidence upon the element of intent to shoot Thorpe?

ISSUE TWO: Was there an illegal search and seizure for the shotgun?

ISSUE THREE: Was the chain of custody of the shotgun sufficient?

ISSUE FOUR: Did the trial court commit error when it modified Bonds' tendered instructions four (4) and six (6)?

Our opinion concludes that there were no errors reflected by the record upon any of the above issues. We affirm.

## II.

## STATEMENT OF THE FACTS

Clifford Bonds met John Thorpe and Robert Cotton at

---

1. IC 1971, 35-13-2-1; Ind. Ann. Stat. § 10-401a (Burns 1973 Supp.).
2. IC 1971, 35-13-3-1; Ind. Ann. Stat. § 10-410 (Burns 1973 Supp.).

Shorty Poppa's Tavern in South Bend, Indiana on May 7, 1971. After having a few drinks, Bonds decided to leave and informed Thorpe and Robert Cotton that he was going to Zack Cotton's home. Thorpe requested that Bonds deliver Twenty Dollars ($20.00) to Zack for him. Bonds left the tavern with the Twenty Dollars ($20.00) and drove with Janet Williams to Zack Cotton's home. He did not deliver the money to Zack Cotton.

Later the same day at a local service station, Thorpe and Bonds had a heated discussion over Bonds' failure to deliver the Twenty Dollars ($20.00) to Zack Cotton. Robert Cotton described this heated discussion as a friendly pushing and shoving affair. Nothing was settled at the service station. Bonds and Janet Williams left the service station in their automobile. At the intersection of Sample and Chapin Streets, they pulled over to the curb so that they could talk with a friend, Gloria Burton. Thorpe approached Bonds as he spoke to Gloria Burton near her car. Thorpe said nothing to Bonds until Gloria Burton's car pulled away. When Bonds proceeded to return to his car, Thorpe followed. A discussion concerning the Twenty Dollars ($20.00) that Thorpe had given to Bonds was renewed. Some scuffling occurred between Bonds and Thorpe in front of Bonds' car. Both Janet Williams and Robert Cotton were unsuccessful in their attempt to intercede. Bonds broke away from Thorpe and proceeded to the rear of his car. He removed a shotgun from his trunk, cocked it and approached Thorpe at the front of his automobile. The shotgun discharged and Thorpe was struck in his right arm. A group of firemen and Cleophus Williams noticed the altercation. Officer Paul Harvey of the South Bend Police Department was approaching the Police Station nearby and noticed the commotion at the intersection. When the shot was fired, the firemen and Cleophus Williams summoned Officer Harvey to the scene. Officer Harvey rushed to his patrol car and approached the scene of the shooting

within seconds. Officer Harvey's patrol car never came to a stop as he received instructions from the witnesses who urged the apprehension of Janet Williams who was fleeing from the scene with the weapon in Bonds' car. Officer Harvey pursued the car and overtook it in a very short time. When he stopped Janet Williams, she could not explain the presence of the shotgun in plain view on the front seat of the car. Officer Harvey seized the shotgun.

When Officer Ernest Nybo arrived at the scene of the shooting, he observed Bonds standing over Thorpe who was lying wounded on the ground. Officer Nybo was told that Bonds had shot Thorpe. He did not search Thorpe. The testimony of Gloria Burton and Janet Williams, as well as the testimony of Bonds, suggested that Thorpe had a weapon of some kind in his pocket. No weapon, other than the shotgun, was ever found at or near the scene. Bonds was arrested and taken to Police Headquarters where he was advised of his Miranda rights. He waived those rights and gave a statement which was reduced to writing and signed. Bonds admitted shooting Thorpe in self-defense. Bonds was charged by affidavit with assault and battery with intent to kill on May 10, 1971. He pled not guilty to this charge one week later. On February 28, 1972, Bonds was tried by jury and convicted of the lesser includable offense of aggravated assault and battery. After sentencing, Bonds filed a motion to correct errors which was overruled.

### III.
### STATEMENT OF THE ISSUES

Bonds' overruled motion to correct errors raises these issues:

ISSUE ONE: Was there sufficient evidence upon the element of intent to shoot Thorpe?

ISSUE TWO: Was there an illegal search and seizure for the shotgun?

ISSUE THREE:     Was the chain of custody of the shot-
gun sufficient?

ISSUE FOUR:     Did the trial court commit error when
it modified Bonds' tendered instruc-
tions four (4) and six (6)?

Our *Statement on the Law* concludes that no errors are pre-
sented by these issues. We affirm.

## IV.
## STATEMENT ON THE LAW

ISSUE ONE: *Sufficiency of the Evidence.*

This Court cannot weigh the evidence nor determine the
credibility of witnesses who appeared before the trial court.
We look only to that evidence most favorable to
the State and the reasonable inferences therefrom in
support of the jury's verdict. A conviction must be
affirmed if from that viewpoint, there is substantial evidence
of probative value from which the jury, as the trier of fact,
could reasonably infer beyond a reasonable doubt that Bonds
did form the requisite intent. *Walker* v. *State* (1973), 155
Ind. App. 404, 293 N.E.2d 35; *Shank* v. *State* (1972), 154
Ind. App. 147, 289 N.E.2d 315.

The State has the burden of proving that Bonds either
intentionally or knowingly inflicted great bodily harm upon
Thorpe. IC 1971, 35-13-3-1; Ind. Ann. Stat. § 10-
410 (Burns 1973 Supp.). This intent can be in-
ferred from the use of a dangerous weapon or the
voluntary commission of an act. *Black* v. *State* (1971), 256
Ind. 487, 269 N.E.2d 870; *Ives* v. *State* (1969), 252 Ind. 129,
246 N.E.2d 389.

Bonds' self-defense contention depends on whether he acted
reasonably in moving to repel any endangering advance by
Thorpe at the time of the shooting. *Johnson* v. *State*
(1971), 256 Ind. 579, 271 N.E.2d 123; *Heglin* v.
*State* (1957), 236 Ind. 350, 140 N.E.2d 98; and

*Hughes* v. *State* (1937), 212 Ind. 577, 10 N.E.2d 629. Once self-defense is succesfully raised, the State had the burden of rebutting it. *Johnson* v. *State, supra.* Sufficient rebuttal evidence may have been presented by the State in its case in chief. *Nelson* v. *State* (1972), 259 Ind. 339, 287 N.E.2d 336. Whether a plea of self-defense has validity is an ultimate question of fact for the jury. *Clardy* v. *State* (1973), 156 Ind. App. 121, 294 N.E.2d 807; *Stock* v. *State* (1969), 252 Ind. 67, 245 N.E.2d 335. This Court will not weigh conflicting evidence presented to the jury.

The foregoing facts bear a striking resemblance to those before our Supreme Court in *Nelson* v. *State, supra.* As in *Nelson,* the defendant and a supporting witness suggest that the victim was armed. The Court held there was ample evidence in the State's case in chief to show that the defendant was the aggressor. We reach a similar result in the case at bar. Bonds' self-defense contention was opposed by sufficient evidence of probative value upon which the jury could rely in finding that Bonds either intentionally or knowingly shot Thorpe, with that act not being based on a reasonable exercise of Bonds' right to self-defense. This conclusion is further fortified by the inference that a requisite intent may be inferred from the use of a dangerous weapon or the voluntary commission of an act. *Ives* v. *State* and *Black* v. *State, supra.* We find no error.

ISSUE TWO: *Search and Seizure.*

Janet Williams left the scene of the shooting in an automobile with the shotgun laying on the front seat. Officer Harvey arrived at the scene shortly after she left. He was told by a fireman and Cleophus Williams, both witnesses to the shooting, that Janet Williams had just left. They gave Officer Harvey the license number of Bond's automobile. Seconds later, Officer Harvey stopped Janet Williams in Bonds' automobile and took the shotgun which was laying

in his view on the front seat. Two propositions of law will be examined as to the stopping of Janet Williams.[3]

The stopping of Janet Williams in Bonds' automobile depends upon Officer Harvey's probable cause. *Henry* v. *United States* (1959), 361 U.S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134; *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738. If probable cause is not sufficient for the stopping action taken by Officer Harvey, we must look to any exigent circumstances and the reasonableness of Officer Harvey's action in light of the facts known to him at the time. *Adams* v. *Williams* (1972), 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612; *Terry* v. *Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889; *State* v. *Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874; *Bryant* v. *State* (1973), 157 Ind. App. 198, 299 N.E.2d 200 and *Luckett* v. *State, supra.*

Officer Harvey saw two men engaged in an altercation as he started to enter the Police Station. He heard a shotgun blast and saw several witnesses at the scene motioning to him for aid. Within seconds, he arrived at the scene and was given information about Janet Williams fleeing the scene in a car within his view. Officer Harvey could have inferred from these fast moving events that Janet Williams was a principal or accomplice fleeing the scene of a possible homicide with essential evidence. Officer Harvey had probable cause for stopping Janet Williams.

A second approach to the stopping question is an examination of the circumstances and the reasonableness of Officer Harvey's actions in the light of these circumstances. Our Indiana Supreme Court in *Luckett* v. *State, supra,* 284 N.E.2d at 741 in reliance upon *Terry* v. *Ohio, supra,* stated in an opinion written by Justice Hunter that:

"... Officer Jackson was placed in a position where he had to choose between immediate action on the one hand and

---

3. See *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738; then compare *Bryant* v. *State* (1973), 157 Ind. App. 198, 299 N.E.2d 200 and *Williams* v. *State* (1973), Ind. App., 299 N.E.2d 882.

restraint on the other. Efficient and effective law enforcement, in which there is a strong governmental interest, can best be accomplished by immediate action. . . . [I]t *sic* appears to be well settled that there is nothing *automatically* unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking. . . . The constitutionality of such detentions depends solely upon the reasonableness of the action taken by the police officer."

The reasonableness of stopping Janet Williams in Bonds' automobile depends upon the facts known to Officer Harvey at the time he stopped the car. *State* v. *Smithers, supra,* 256 Ind. at 517. At the time Officer Harvey stopped Janet Williams, he knew these facts:

1. That he had observed a scuffle or altercation between two men near the Police Station;
2. He had heard an explosion which may have been a firearm;
3. He observed firemen at the scene of the scuffle and explosion motioning for him to come to their aid and heard them calling for help;
4. He was given information by these men at the scene concerning a 1958 Oldsmobile which was attempting to leave the scene of a possible homicide;
5. He observed the 1958 Oldsmobile which Janet Williams was driving as it was attempting to leave the scene and never let it out of his sight until he finally stopped it seconds later near the scene.

These facts satisfy the reasonableness test for stopping Janet Williams in Bonds' automobile. *Bryant* v. *State, supra.*

The shotgun seized by Officer Harvey was in plain view on the passenger's front seat of the automobile. A search connotes a prying into hidden places to discover that which is concealed. *Alcorn* v. *State* (1970), 255 Ind. 491, 265 N.E.2d 413. A search does not occur when an item is observed in open view and therefore, such an observation need not be supported by probable cause. *Millar* v.

*State* (1973), 260 Ind. 368, 295 N.E.2d 814; *Griffin* v. *State* (1972), 259 Ind. 205, 285 N.E.2d 644 and *Alcorn* v. *State, supra.*

The "plain view" doctrine is not in contravention of the general and well established rule that all warrantless searches are unreasonable. *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564; *Katz* v. *United States* (1967), 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576. It is an exception. The shotgun was inadvertently observed by Officer Harvey when he stopped Janet Williams. The fleeing automobile from the scene provides the basis for sufficient exigent circumstances necessitating prompt action. *Chambers* v. *Maroney* (1970), 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419; *Carroll* v. *United States* (1925), 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543. We find no error as to Issue Two.

ISSUE THREE: *Chain of Custody.*

The shotgun was offered into evidence at trial. The defendant objected that its chain of custody had not been established. The trial court overruled the objection for the reason that the doctrine of chain of custody did not apply where the exhibit, like the gun in the case at bar, did not "lend itself to alteration or substitution."

The requirement that the State establish the chain of custody of an exhibit as a condition to its admissibility has been applied in this State most often to cases involving narcotics and fungible or small items. However, in *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, our Supreme Court indicated that although the doctrine applied especially in such situations where the danger of tampering, loss or mistake was the greatest; its application is not limited solely to such instances. See *Graham* v. *State, supra,* 253 Ind. at 531, 255 N.E.2d 652. Therefore, the doc-

trine of chain of custody technically applies to the offer of the shotgun here at issue.

The burden of the State to negate the possibility of tampering may be greater in some cases than in others. This burden depends upon the nature of the exhibit and how essential the exhibit is to prove an element of the crime for a conviction. *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N.E.2d 579. The mere possibility of tampering coupled with evidence which "strongly suggests" the continuous whereabouts of an exhibit at all times will often be sufficient to sustain the State's burden. *Butler* v. *State* (1972), 154 Ind. App. 361, 289 N.E.2d 772. Here, the exhibit was initialed by Officer Harvey and identified by numerous other witnesses as the weapon used by Bonds to shoot John Thorpe. Bonds failed at trial and on this appeal to give any specific evidence supporting even a possibility of tampering or substitution. The introduction of the weapon used by Bonds was not an essential element of his conviction for aggravated assault and battery. We find no error.

ISSUE FOUR: *Alteration of Bonds' Instructions.*

Bonds contends that the trial court erred in its alteration of the instructions he had tendered to it. Such a contention is wholly without merit.

A sentence was deleted from each of Bonds tendered instructions numbers four (4) and six (6). That sentence was in each case repetitive of other language in the same instruction. The trial court was not required to accept tendered instructions and give them in the exact language in which they were submitted. The instructions may be given in the Court's own words so long as they are proper. *Beatty* v. *State* (1963), 244 Ind. 598, 194 N.E.2d 727. Additionally, the trial court need not be restricted to the use of certain "sacred" phrases as long as the instructions

given clearly state the correct legal principals at issue. *Fisher* v. *State* (1973), 259 Ind. 633, 291 N.E.2d 76.

The trial court committed no error in giving the instructions as modified.

## V.

## DECISION OF THE COURT

ISSUE ONE: Reviewing the evidence in a light most favorable to the State, the evidence was sufficient to support a reasonable inference that Bonds intentionally or knowingly inflicted great bodily harm upon John Thorpe. The intent to commit the shooting may be inferred from Bonds' use of a dangerous weapon and his voluntary commission of the act.

The validity of Bonds' plea of self-defense was an ultimate question of fact solely for the jury.

ISSUE TWO: The shotgun entered into evidence at Bonds' trial was not the product of an illegal search and seizure. Officer Harvey acted both reasonably under exigent circumstances and upon sufficient probable cause to support his detention of Janet Williams.

Officer Harvey's observation of the shotgun in plain view on the front seat of the car did not amount to a search contemplated by the Fourth Amendment of the United States Constitution.

ISSUE THREE: The doctrine of chain of custody technically applies to the State's offer of the shotgun into evidence. However, the evidence strongly suggests the whereabouts of the item prior to its introduction. The slight chance of alteration or substitution coupled with Bonds' failure to show any prejudice or possibility of alteration results in the inescapable conclusion that no error resulted from the gun's introduction.

ISSUE FOUR: The trial court's modification of Bonds' instructions was not error. The trial court is not required to accept tendered instructions and give them in the exact

language in which they are submitted. The court may, in its discretion, give the instructions in its own words so long as they are proper. Here, the deleted language was repetitive and the trial court did not commit error by its alteration of Bonds' tendered instructions.

Therefore, the judgment of the trial court should be, and the same hereby is affirmed.

Hoffman, C.J. and Lybrook, J., concur.

NOTE.—Reported at 303 N.E.2d 686.