WAYNE LAMBERT v. STATE OF INDIANA.

[No. 1-273A29. Filed January 31, 1974. Rehearing denied March 5, 1974. Transfer denied May 6, 1974.]

*Richard L. Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Larry C. Gossett,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant Wayne Lambert was charged with assault and battery with intent to kill, tried by jury, and convicted of aggravated assault and battery. The following issues are presented for review in this appeal:

1. Whether the trial court erred in failing to rule in appellant's favor on his claim that he was denied a fair trial due to the alleged presence of the bailiff in the jury room during their deliberations.

2. Whether the verdict is supported by sufficient evidence and in accordance with the law.

The evidence most favorable to the State reveals that at 1:30 A.M. on November 29, 1970, Merrill Ranck and his thirteen year old son Keplin drove to appellant's residence. Ranck was searching for a missing daughter who was employed by appellant. Leaving his son in the truck, Ranck walked to the door and knocked. When appellant answered the door, Ranck inquired as to the whereabouts of his daughter. Appellant's response was that he would not tell him. After Ranck persisted, appellant told Ranck that he had no right to ask him such questions and emerged through the door with a gun. A scuffle ensued on the porch in which Ranck attempted to hold appellant between himself and the gun. Both men then fell from the porch, and Ranck started toward his truck. Hearing appellant behind him, he turned back toward the house and raised his hands. Appellant then shot Ranck three times. Ranck fearing that appellant was preparing to shoot him a fourth time, managed to make his way either through or over a hedge onto the street where

he remained while his son summoned assistance. Ranck was not armed at any time during the scuffle.

The above account is based on the testimony of Ranck. The sole witness to the altercation was Ranck's son. Though unable to recount the argument in great detail due to the speed at which it occurred and his position in the truck, his testimony as to the men's general movements basically corroborates that of his father. The appellant did not take the stand.

## ISSUE 1.

With his Motion to Correct Errors, appellant filed affidavits of two persons alleging that the bailiff entered the jury room during their deliberations. At the subsequent hearing on the motion, appellant called four witnesses to testify concerning the bailiff's alleged misconduct.

With its answer to appellant's Motion to Correct Errors the State filed a counter-affidavit wherein the bailiff denied that he was ever present in the jury room during their deliberation of the cause or conversed with any of the jurors during that time.

Appellant argues that since the affidavit was never formally admitted into evidence and the bailiff did not testify at the hearing on the Motion to Correct Errors, there was no denial of the alleged misconduct. However, we must direct appellant's attention to Criminal Rule 17, which reads:

"When a motion to correct errors is supported by affidavits, notice of the filing thereof shall be served upon the opposing party, or his attorneys of record, within ten [10] days after the filing thereof, and the opposing party shall have twenty [20] days after such service to file counter-affidavits; reply affidavits may be filed within ten [10] days after filing of counter-affidavits, which periods may be extended within the discretion of the court for good cause shown. *Such affidavits shall be considered as evidence without the introduction thereof on the hearing on the motion, and shall be a part of the record without a bill of exceptions.* If, besides the affidavits, additional evidence is received, the trial court shall cause the court reporter to record all such evidence,

and when so transcribed, the same shall be submitted to the judge, who shall certify that it is a true and complete transcript of such evidence, and the same shall be filed with the court and be a part of the record on appeal without being incorporated into any bill of exceptions. (Our emphasis.)

It was, of course, the function of the trial judge to determine the credibility of the four witnesses who testified on appellant's behalf during the hearing on the motion. However, even assuming the witnesses' testimony to be true, we are of the opinion that it fails to establish that the bailiff interfered with the jury during their deliberation.

The four witnesses, all friends of the appellant, testified that the alleged misconduct took place on June 26, 1971. Kenneth McFarland testified that on that afternoon, he observed the bailiff briefly step inside the door of the jury room on two occasions. On one of these occasions the bailiff was allegedly heard to ask the jury whether they would be able to "wind this up this afternoon."

Charles Young testified that he observed the bailiff briefly enter the door on three occasions that same afternoon. The first two times he allegedly heard the bailiff ask respectively whether everything was all right and whether they needed anything. Young testified that on the third occasion he heard the bailiff ask the jury whether they were "gonna be able to wind this up this evening."

Brenda Stewart testified that on that same afternoon, she was standing in the hallway with Kenneth McFarland, Charles Young, and her husband, Gary Stewart. She too, testified that the bailiff entered the jury room at least twice and on one occasion heard the bailiff ask if "they could wind it up and get it over just as soon as possible." On cross-examination she admitted that she did not report the alleged misconduct to appellant's counsel until "quite a few weeks" following the trial.

Mrs. Stewart's husband testified that he observed the bailiff enter the jury room twice. However, his testimony reveals

that this was done on the morning of the 26th during two occasions when the jury was temporarily dismissed from the court room, during the trial.

In its brief, the State argues that the witnesses' testimony wholly failed to establish that the bailiff interfered with the jury during their deliberations since the jury did not begin their deliberations until June 27.

In appellant's reply brief, it is argued that counsel was confused as to the correct date while examining the witnesses, and that the observations of the bailiff's conduct actually occurred on June 27, the final day of trial. In making this assertion, appellant refers only to the testimony of McFarland and Young. The dates given by Brenda and Gary Stewart are clearly correct since they both testified that they were present only on the first day of trial.

Even assuming the veracity of McFarland's and Young's testimony and the fact that their observations were actually made on June 27 after the cause had been given to the jury for deliberation, we are satisfied that no harm or prejudice could have resulted. See *Conrad* v. *Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546.

It is clear from *Conrad,* that the mere fact of a bailiff's entry into a jury room during deliberations is not, in and of itself, a ground for reversal. In that case, the bailiff was present in the jury room for several minutes and engaged in a search with the jurors for a verdict form which they believed to be missing. Our Supreme Court concluded that no reversible error resulted since there was no evidence indicating that the defendants had suffered any harm as a result of this activity.

Appellant relies on *Laine* v. *State* (1972), 154 Ind. App. 81, 289 N.E.2d 141, in arguing that the bailiff's alleged conduct constitutes reversible error. However, that case is clearly distinguishable from the instant case. In *Laine,* the bailiff undertook an explanation of the various verdict forms which had been submitted to the jury. Likewise, in the

recent case of *Sparks* v. *State* (1972), 154 Ind. App. 691, 290 N.E.2d 793, the bailiff advised the jury as to the meaning of the term "disfranchisement". In each of these cases, the bailiff became actively engaged in matters relevant to the jury's deliberations.

In the instant case, the appellant alleges at most three brief entrances into the jury room accompanied by a simple question on each occasion. Appellant does not contend that prejudice could have resulted from the bailiff asking the jury whether they needed anything or whether everything was all right. However, he does assert that harm would inevitably result from the bailiff inquiring as to whether they would be able to reach a verdict that afternoon. We find no intimidation or threat in this simple inquiry which would cause a jury to accelerate their deliberations.

Unlike those cases cited and relied upon by the appellant, the bailiff here denied entering the jury room during the jury's deliberations. It was within the province of the trial court to determine the credibility of the witnesses presented by appellant at the hearing on his Motion to Correct Errors. Three of those witnesses testified to hearing the bailiff ask the jury whether they would be able to reach a verdict that afternoon. Curiously though, one of those witnesses, by her own testimony was present only on the first day of trial, and therefore could not have been present during the jury's deliberations. However, since we cannot determine matters of credibility, and since the record does not reveal the basis of the trial court's ruling upon this issue, we have chosen to demonstrate that even assuming the truth of the allegations concerning the bailiff's conduct, no reversible error exists therein.

Hence, appellant's first contention of error must fail.

## ISSUE 2.

It is next submitted that appellant's conviction is not sustained by sufficient evidence and is therefore contrary to law.

Appellant was found guilty of the crime of aggravated assault and battery as defined in IC 1971, 35-13-3-1; Ind. Ann: Stat. § 10-410 (Burns 1973 Supp.), which reads:

"Whoever intentionally or knowingly and unlawfully inflicts great bodily harm or disfigurement upon another person is guilty of aggravated assault and battery and upon conviction shall be imprisoned in the state prison for not less than one [1] year nor more than five [5] years, to which may be added a fine in any amount not to exceed one thousand dollars [$1,000]."

The material elements of the offense are an intentional and unlawful infliction of a great bodily harm or disfigurement upon another. *Priola* v. *State* (1973), 260 Ind. 117, 292 N.E.2d 604. Appellant argues that his actions were in self-defense and therefore not unlawful.

Appellant correctly states the law in Indiana concerning the defense of self-defense as found in *Johnson* v. *State* (1971), 256 Ind. 579, 271 N.E.2d 123:

". . . [T]hat one is entitled to defend himself in circumstances where it reasonably appears that he is in danger of bodily harm has long been the law. *Culp* v. *State* (1944), 222 Ind. 202, 52 N.E.2d 486; *Hughes* v. *State* (1937), 212 Ind. 577, 10 N.E.2d 629; *Duncan* v. *State* (1882), 84 Ind. 204. Further, as we said in *Hughes* v. *State, supra:*

'It is not necessary that a person be violently assaulted, or assaulted at all, before he has the right to defend himself. A person has a right to act on appearance, and if he believes, in good faith and upon reasonable grounds, from the facts and circumstances as they appear to him at the time, that he is about to be assaulted, he has a right, if it seems reasonably necessary to him at the time, to use such force as will protect him from the assault.' "

\* \* \*

". . . As was said in *Heglin* v. *State* (1956), 236 Ind. 350, 140 N.E.2d 98:

'A man has a right to act upon appearances of actual and immediate danger, if he sincerely believes such apparent danger exists. The danger need not be actual. It need be only apparent to a reasonable person under the circumstances. The law protects persons who feel compelled to act at such times even though in retro-

spect it is proved they have erred. The law takes into consideration the surrounding circumstances under which the events took place. . . ."

"Our case law in Indiana recognizes the right of every citizen to reasonably defend himself against unwarranted attack. Therefore self-defense in homicide and assault cases must remain a viable rule and when such defense is asserted and supported by the evidence it may not be casually thrust aside by the jury. Hence the burden was upon the State to negate the element of self-defense by substantial evidence of probative value."

In our opinion, however, a review of the evidence in the instant case negates any inference that appellant was acting in self-defense.

At this point, we reaffirm the principle that in determining questions concerning the sufficiency of the evidence to sustain a conviction we will neither weigh the evidence nor resolve questions of credibility of witnesses. Rather we will look to that evidence and the reasonable inferences therefrom which support the findings of the trial court. *Priola, supra; Froedge* v. *State* (1968), 249 Ind. 438, 233 N.E.2d 631; *Anderson* v. *State* (1973), 155 Ind. App. 121, 291 N.E.2d 579. That evidence reveals that Ranck went to appellant's residence to inquire concerning the whereabouts of his daughter, and Ranck's questioning precipitated an argument, during the course of which appellant emerged onto the front porch carrying a hand gun. Ranck, who was unarmed, grabbed the appellant in an attempt to hold the appellant between himself and the gun. During this scuffle, both men fell from the porch. It was after Ranck had begun to retreat toward his vehicle and made a gesture of surrender that appellant shot him three times.

Though appellant did not testify, he attempted to establish through the testimony of his wife and sister-in-law that Ranck had made threats upon his life. However, this was denied by Ranck.

Even assuming *arguendo* that Ranck was the initial aggressor, the evidence reveals that appellant's actions exceeded

the bounds allowed under the law of self-defense. Appellant had, at the time of the infliction of the injury upon Ranck, become the aggressor to an unreasonable degree. Compare, *Stallings* v. *State* (1970), 255 Ind. 365, 264 N.E.2d 618.

Therefore, appellant's claim that his conviction is not supported by the evidence and is therefore contrary to law must fail.

Judgment affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 306 N.E.2d 115.