Melvin TUNSTILL, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8810–CR–884.

Supreme Court of Indiana.

March 21, 1991.

Richard D. Gilroy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was tried to a jury on a charge of murder and was found guilty of voluntary manslaughter, a Class B felony, I.C. 35–42–1–3.[1] He received an executed sentence of twenty years. In this direct appeal, appellant challenges both the validity of his conviction and the propriety of his sentence.

■ Appellant first argues that the evidence is insufficient to support a conviction for manslaughter. Specifically, appellant claims that the evidence at trial established that he acted in self-defense. Where the issue of self-defense is asserted by a defendant and finds support in the evidence, the State then has the burden of negating the presence of one or more of the necessary elements of the defense: that the defendant acted without fault, that he was in a place where he had a right to be, and that he acted in reasonable fear or apprehension of death or serious bodily injury. *Ashford v. State* (1984), Ind., 464 N.E.2d 1298; *Johnson v. State* (1971), 256 Ind. 579, 271 N.E.2d 123. The standard of review for sufficiency claims where the issue of self-defense is raised is the same as in any other context. This Court will neither reweigh the evidence nor judge the credibility of the witnesses, but will affirm the conviction if the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom provide probative evidence from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Ashford*, 464 N.E.2d 1298.

■ The evidence produced at trial most favorable to the verdict shows that the victim, Jerry Wayne Haggard, died of a single stab wound inflicted by appellant during a scuffle which occurred at a little after 2:00 a.m. on July 19, 1987, in the parking lot of B & B Liquors in Indianapolis. Appellant and Haggard had been acquainted for six or seven years and often socialized and drank together and, in fact, Haggard had stopped by appellant's house twice on the day before the incident. Haggard was drinking during both visits and

used cocaine during the second visit, which was at about 6:00 in the evening. Appellant did not see Haggard again until their encounter in the parking lot in the early hours of the next morning.

At approximately 1:45 a.m. on July 19, appellant walked from his house to B & B Liquors to buy some wine before closing time. The employees had already locked the door, and several people were congregated in the parking lot. Keith Allen, a clerk at B & B, let appellant in because it was not quite 2:00 and because he knew appellant to be a regular customer. Short of the cash necessary to make his purchase and unable to obtain a loan or credit from any of the employees present, appellant backed out of the store, still talking to Allen. As he took a step backward, appellant brushed into Haggard. Appellant turned and said to Haggard, "Hey, what's happening?", whereupon Haggard kicked appellant in the groin. Appellant backed away, repeating, "Hey, man, what's going on? What's wrong with you?" and Haggard kicked him again. Haggard kicked appellant a third time, this time in the shins, and appellant pushed Haggard backward. Haggard stumbled, and appellant pulled out a knife and, still backing up but swinging the knife from side to side in front of him, said, "What's wrong with you? You must want to die. Do you want to die, nigger?" Haggard continued advancing, the two "clenched," according to one witness, then Haggard staggered back with his hands pressed against his body and fell onto a parked car. He died shortly thereafter. Appellant ran from the scene and surrendered to police at his home without incident later that day.

Appellant argues that the State failed in its burden to negate beyond a reasonable doubt that his act of stabbing Haggard was committed in response to a reasonable fear or apprehension of death or serious bodily injury. In support of this argument, he cites to testimony by scene witnesses that Haggard kicked him repeatedly and struck blows with a hand as well as his

---

1. Subsequent to appellant's conviction and sentencing, the voluntary manslaughter statute was

amended to make the offense a Class A felony if committed by means of a deadly weapon.

feet, that Haggard was the larger of the two, and that Haggard appeared to be the aggressor throughout the incident and appeared to be under the influence of alcohol and cocaine.

Appellant's own testimony, however, was that Haggard kicked him only three times and never used his hands at all. Appellant also testified that, other than a pocket-knife, he had never known Haggard to carry a weapon of any sort. Scene witnesses testified that Haggard did not appear to be armed that night, and police witnesses testified that no weapon was found on Haggard's person, in a paper bag he was carrying, or anywhere in the vicinity of the altercation. All of the scene witnesses testified further that appellant did not appear to be bloodied or bruised in the scuffle and that he did not even limp as he fled the parking lot. Every witness who saw Haggard that night, including appellant, testified that he was visibly "high," and the testimony of a forensic pathologist indicated that the victim was extremely intoxicated at the time of his death. Tests conducted as part of the autopsy showed that, even after his blood had been diluted by blood transfusions given during emergency medical treatment, the victim registered .21 blood alcohol content, which is over twice the level required to establish drunken driving, and had a blood cocaine level of .11 milligrams per deciliter, which the pathologist noted was very high.

In his own trial testimony, appellant flatly denied that he meant to stab Haggard at all, and, in fact, stated that he would not describe his actions as self-defense. He testified rather that Haggard charged him and ran onto the knife as he held it in front of himself, attempting to warn Haggard off. In response to a hypothetical positing such a situation, the pathologist testified that a great deal of pressure would have to be exerted to cause a wound of the length and depth of Haggard's wound and that he thought it unlikely that Haggard's death could have been caused by his running onto the knife because that scenario would "require that the knife be held very firmly in a stationary position while the body was impaled upon the knife with considerable force."

Even where a homicide victim initiates an attack on the defendant, "the trier of fact may find that the use of deadly force is not justified if a reasonable person in the same circumstances would not have been placed in reasonable fear of death or great bodily harm." *Ashford*, 464 N.E.2d at 1300–01. The witnesses here testified uniformly that Haggard initiated the conflict and that he seemed intent on continuing it. The jury could have found nonetheless that, given the circumstances in which appellant found himself, his use of deadly force was not justified by a reasonable fear of death or serious bodily injury based on the evidence that the two men knew each other well, that Haggard was extremely intoxicated, that Haggard was not armed and appellant knew that he did not typically carry a weapon, that Haggard struck only three blows with his feet to the lower part of appellant's body and none with his hands, and that the blows caused no discernible injuries to appellant. This was sufficient evidence to negate appellant's claim of self-defense. *Id.*

■ Appellant was charged with murder, and the jury returned a conviction for voluntary manslaughter. The trier of fact may convict a defendant of this lesser offense if it finds that he knowingly or intentionally killed while acting under sudden heat. I.C. 35–42–1–3. The evidence presented at trial of the unanticipated attack on appellant by one he considered to be his friend supports the jury's conclusion that appellant was acting under sudden heat when he stabbed Haggard. The evidence was sufficient to support appellant's conviction for voluntary manslaughter.

Appellant also challenges the propriety of his sentence. The trial court enhanced the standard ten-year sentence for a Class B felony by an additional ten years and imposed a twenty-year executed sentence. At the sentencing hearing, the trial court stated that the imposition of an enhanced sentence was warranted by the presence of two aggravating circumstances: 1) appellant was on probation at the time of the

instant crime and 2) appellant's criminal history, consisting of three prior arrests. The court made no mention of any mitigating factors. Appellant argues that the aggravating circumstances cited by the trial court were considered in error, that the trial court erred in failing to find the presence of any mitigating circumstances, and that the sentence imposed was manifestly unreasonable.

■ Appellant first argues that the trial court erred in considering him to have been a probationer at the time the instant offense was committed. Prior to the events at issue here, appellant was convicted of possession of heroin and methadone. He received a suspended sentence, was ordered to pay a $320.00 fine and court costs, and was placed on a year's probation which was to run from March 7, 1986, to March 7, 1987. In March of 1987, four months before the instant crime, a petition was filed charging that appellant was in violation of his probation because he had not paid the fine and costs. Under I.C. 35–38–2–3(b), the relevant statute in effect in 1987, upon the filing of such a petition and the issuance of a warrant or summons, the period of probation is tolled until the final determination of the charge.[2] Appellant does not contend that he received no warrant or summons and that therefore the period of his probation had not been tolled, and the record indicates that the final hearing on the probation violation was held approximately a week before the sentencing hearing on the instant charge. Appellant's argument is that "the Court's statement that he was on probation at the time of the incident was in error because the records indicate that a probation violation was filed back in March, of 1987, only because the defendant did not pay a $320.00 fine and court costs." Not surprisingly, appellant is unable to cite any authority for the proposition that failure to pay a court-ordered fine and costs imposed as a condition of probation does not constitute a violation of that probation or that

such a violation cannot be considered by a court which is imposing sentence for a subsequently committed offense. Appellant's probation period was tolled until the time that a final determination on the violation petition was made, which occurred well after the commission of the charged crime. While not entitled to much weight, appellant's continuing status as a probationer could properly be considered by the trial court as an aggravating circumstance.

■ Appellant next contends that the trial court committed error by citing three prior arrests as the basis for its finding that his criminal history constituted an aggravating circumstance and in failing to consider evidence of mitigating circumstances apparent on the record. The statement setting out the trial court's rationale for imposing an enhanced sentence read in its entirety as follows:

> The Court would enter judgment of conviction against the defendant for voluntary manslaughter as a Class B felony. The Court has read the pre-sentence, the Court did hear the testimony that was submitted during the trial on this matter. The Court does find the following aggravating circumstances: That the defendant was on probation at the time the offense was committed. That the defendant's prior criminal history, consisting of an arrest on February 3, 1970, of carrying a concealed weapon, an arrest on May 18, 1971, for assault and battery with intent to kill, an arrest on March 13, 1983 for battery with injury, and other arrests indicating that the defendant's conduct was in fact escalated from carrying a concealed weapon, to in fact, voluntary manslaughter.

At the time of appellant's sentencing hearing, I.C. 35–38–1–7, which was repealed in 1990 and replaced with I.C. 35–38–1–7.1,[3] identified the factors which the court was to take into consideration in imposing sentence. Subsections (b) and (c) set out circumstances which the court was allowed to consider in aggravation and mitigation;

---

**2.** This provision is now codified at I.C. 35–38–2–3(c).

**3.** The language of subsections (b)(2) and (d), relevant here, is precisely the same in both statutes.

subsection (d) stated that "the criteria listed in subsections (b) and (c) do not limit the matters that the court may consider in determining the sentence."

If the sentencing court found that appellant "ha[d] a history of criminal or delinquent activity," the court was authorized to consider that fact as an aggravating circumstance under I.C. 35–38–1–7(b)(2), and it is clear from the court's sentencing statement that it considered appellant's prior arrests to be instances of criminal behavior establishing such a history. In this, the court was in error. A record of arrest, without more, does not establish the historical fact that the defendant committed a criminal offense on a previous occasion such that it may be properly considered as evidence that the defendant has a history of criminal activity. In order to enhance a criminal sentence based, in whole or in part, on the defendant's history of criminal activity, a sentencing court must find instances of specific criminal conduct shown by probative evidence to be attributable to the defendant. A bare record of arrest will not suffice to meet this standard.

■ An arrest is "the taking of a person into custody, that he may be held to answer for a crime." I.C. 35–33–1–5. An arrest is permissible without a warrant if the arresting officer had, at the time of the arrest, probable cause to believe that the person had committed a felony. *Collins v. State* (1987), Ind., 509 N.E.2d 827, 829–30. An arrest may also be made pursuant to a warrant, which is itself based upon either the return of an indictment or upon probable cause. I.C. 35–33–2–1(c). Probable cause exists when, at the time the warrant is sought or the arrest is made, the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the person committed the criminal act in question. *Collins*, 509 N.E.2d at 830. The act of placing a person under arrest indicates only a belief, albeit strong, that the arrested person is guilty of a crime, but does not itself constitute a determination of the historical fact of that person's guilt.

■ The historical fact that a defendant has committed a crime, such that it may then be properly found to constitute the aggravator of a criminal history, may be established upon evidence that the defendant has been convicted of another crime, *see, e.g., Smith v. State* (1986), Ind., 490 N.E.2d 748 (two prior felony convictions sufficiently supported sentencing court's finding of criminal history, therefore impact of arrest record as an aggravator not addressed); *Hoelscher v. State* (1984), Ind., 465 N.E.2d 715 (misdemeanor convictions sufficient to constitute criminal history); upon his own admission of guilt of another crime, *see, e.g., Randall v. State* (1983), Ind., 455 N.E.2d 916 (defendant admitted that he was a drug dealer, a drug user and a car thief in trial testimony); *Holmes v. State* (1980), 272 Ind. 435, 398 N.E.2d 1279 (defendant admitted involvement in other home burglaries); or upon evidence that the defendant committed another crime which is properly admitted at trial under an exception to the general prohibition against evidence of prior bad acts, *see, e.g., Brooks v. State* (1990), Ind., 560 N.E.2d 49 (evidence that defendant had molested other children based on testimony of other victims admitted under depraved sexual instinct exception properly considered as an aggravator); *Mitchell v. State* (1989), Ind., 541 N.E.2d 265 (evidence of uncharged crime, possession of cocaine, admitted as part of res gestae of charged crime properly considered as an aggravator). Once a defendant's guilt of the other crime is established by conviction, admission, or properly admitted trial evidence, whether or not he was ever placed under arrest is irrelevant. The substance of the aggravator, "history of criminal activity," is the fact that the defendant committed the other crime, not that he was arrested for it.

■ This is not to say that a record of arrests, particularly a lengthy one, should carry no aggravating weight or that it may not be considered by a sentencing court. A long line of cases from this Court holds that allegations of prior criminal activity need not be reduced to conviction before they may be properly considered as aggravating circumstances by a sentencing

court. *Creasy v. State* (1988), Ind., 518 N.E.2d 785 (one pending charge, four arrests); *Dillon v. State* (1986), Ind., 492 N.E.2d 661 (pending felony charges); *McNew v. State* (1979), 271 Ind. 214, 391 N.E.2d 607 (long record of arrests). The court must, however, place this type of information in the proper context when considering it and determining its relative weight. A record of arrests cannot be considered as an aggravator under I.C. 35–38–1–7(b)(2) because it does not reveal to the sentencing court that the defendant has engaged in the kind of behavior which the legislature identified as an aggravator in that subsection. I.C. 35–38–1–7(d), however, gives a sentencing court the flexibility to consider any factor which reflects on the defendant's character, good or bad, in addition to those expressly set out in the rest of the statute when determining the appropriate sentence to impose on that defendant. It is in this category that a record of arrests is properly considered. While a record of arrests does not establish the historical fact of prior criminal behavior, such a record does reveal to the court that subsequent antisocial behavior on the part of the defendant has not been deterred even after having been subject to the police authority of the State and made aware of its oversight of the activities of its citizens. This information is relevant to the court's assessment of the defendant's character and the risk that he will commit another crime and is therefore properly considered by a court in determining sentence. I.C. 35–38–1–7(a)(1) and (a)(3)(B). *See also Willoughby v. State* (1990), Ind., 552 N.E.2d 462, 471 (DeBruler, J., concurring and dissenting); *Chamness v. State* (1983), Ind., 447 N.E.2d 1086, 1088 (DeBruler, J., concurring in result).

█ This Court has also held that criminal charges which are pending at the time of a defendant's sentencing hearing may properly be considered as an aggravating circumstance. *Dillon*, 492 N.E.2d 661; *Stark v. State* (1986), Ind., 489 N.E.2d 43. Pending charges, like arrests, do not establish the historical fact that the defendant committed the crime alleged, but, like arrests, are relevant and may be considered by a sentencing court as being reflective of the defendant's character and as indicative of the risk that he will commit other crimes in the future.

█ As noted above, the sentencing statement at issue here makes it clear that the court inferred that appellant actually committed the crimes for which he was arrested, and this inference constitutes error. The error as to the juvenile weapons charge is harmless because the pre-sentence report reveals that appellant admitted his guilt as part of the disposition of that matter and therefore could properly be considered as evidence of a criminal history. No such evidence of appellant's guilt exists as to the other two arrests, however, and because the court did not attach the proper significance to these circumstances, a remand is necessary for the court to conduct a new sentencing hearing and then to issue an order which reflects that the nature of the aggravators and their relative weights were correctly assessed and found to merit an enhanced sentence or to impose a standard sentence.

█ The trial court's sentencing statement made no reference to mitigating circumstances, neither to specify that the court found none to exist nor to state that any existing mitigators were outweighed by aggravators. Appellant argues that the trial court erroneously failed to consider the following statutory mitigators: that appellant had "substantial grounds tending to excuse or justify the crime though failing to establish a defense," I.C. 35–38–1–7(c)(4), that he "acted under strong provocation," I.C. 35–38–1–7(c)(5), and that the "victim of the crime induced or facilitated the offense," I.C. 35–38–1–7(c)(3). In *Wilkins v. State* (1986), Ind., 500 N.E.2d 747, this Court was presented with a challenge to the sufficiency of a sentencing statement likewise devoid of mention or discussion of mitigating circumstances. We explained:

> The trial court is required to render a description of mitigating circumstances when it reduces the presumptive sentence or when it uses mitigating circumstances to offset the aggravating circum-

stances which serve to enhance the sentence.

Under other circumstances, the use of mitigating circumstances in the determination of the ultimate sentence is not mandatory; it is discretionary with the sentencing court. When a defendant argues mitigating circumstances to the trial court, the sentencing judge is not obligated to explain why he has chosen not to make a finding of mitigation. This is particularly true when an examination of the underlying record shows the highly disputable nature of the mitigating factors. Moreover, the trial court is not obligated to credit or weigh the defendant's evidence of mitigating circumstances the same way the defendant does. However, the failure of a trial court to find mitigating circumstances which are clearly supported by the record may reasonably give rise to a belief that they were overlooked and hence not properly considered.

. . . .

.... If significant mitigating circumstances are clearly supported by the record, it [is] proper to remand with instructions to reconsider the sentence and enter a new sentencing statement in compliance with the foregoing requirements.

*Id.* at 749 (quotation and citation omitted).

In *Wilkins*, the absence of discussion of mitigating factors in that court's sentencing statement was found not to require remand because of the highly disputable nature, weight and significance of the mitigators proferred by the defendant. *Id.* While two of the mitigators alleged by appellant here, namely, that he had substantial grounds excusing or justifying his actions and that he acted under strong provocation, are subject to some dispute, the evidence of his third alleged mitigator, namely, that the victim induced or facilitated the offense, was clearly supported by the record. The uncontradicted evidence of every witness present at the scene of the crime was that Haggard initiated the violence after appellant inadvertently brushed into him and that he advanced on and delivered unprovoked blows to appellant as appellant backed away from him. The complete failure of the trial court to even mention this mitigating circumstance, which was clearly supported by the record, leads this Court to believe that it was overlooked. In accordance with *Wilkins*, therefore, the trial court is instructed that the sentencing statement resulting from the new sentencing hearing on remand is to reflect consideration of this mitigating evidence and the weight accorded to it by the court.

Because of this Court's decision to order a new sentencing hearing based on the trial court's erroneous consideration of aggravators and mitigators, appellant's argument that the sentence imposed was manifestly unreasonable need not be addressed.

Appellant's conviction for voluntary manslaughter is affirmed, and this cause is remanded with instructions that the trial court conduct a new sentencing hearing and to issue a new sentencing statement which supports the imposition of an enhanced sentence or to impose the standard ten-year sentence.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. I accept the recitation of facts in the majority opinion; however, I do not agree with the conclusion of law applied to those facts.

The record clearly shows that appellant was in a place where he had a right to be, that the victim perpetrated an unprovoked attack upon him, that the victim was larger than appellant, that during the attack he continued to back away from the victim, and that appellant was struck several times by the victim. It is true that appellant produced a knife in order to ward off his larger assailant. However, despite the presence of the knife, the assailant charged into the appellant with great force. This collision resulted in the fatal knife wound.

I fully recognize that when a claim of self-defense has been raised, the question

of whether the State has negated that claim of self-defense is a question for the trier of fact. *Spinks v. State* (1982), Ind., 437 N.E.2d 963. Further, a conviction in spite of a claim of self-defense can be reversed on appeal only if no reasonable person can say that self-defense was negated by the State beyond a reasonable doubt. *Spinks, supra; Lilly v. State* (1987), Ind., 506 N.E.2d 23.

In the case at bar, I find nothing in the record nor in the recitation of the facts by the majority which negates appellant's claim of self-defense. I would therefore reverse this case for lack of evidence of guilt and order appellant discharged.