## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 24 2016, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer G. Schlegelmilch
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William E. Gilliland, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 24, 2016 <br><br> Court of Appeals Case No. <br> 48A02-1508-CR-1246 <br><br> Appeal from the Madison County Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. <br> 48C04-1412-FA-2222 |

**Altice, Judge.**

**Case Summary**

Following a jury trial, William E. Gilliland was convicted of child molesting as a Class A felony and two counts of child molesting as a Class C felony. The trial court sentenced Gilliland to an aggregate term of forty years. Gilliland presents two issues for our review:

> 1. Did the trial court abuse its discretion in identifying aggravating and mitigating factors?
>
> 2. Is his sentence inappropriate in light of his character and the nature of the offense?

We affirm.

**Facts & Procedural History**

In 2001, Gilliland retired from General Motors and purchased a business in Pendleton, Indiana that had been operating as a glass and gift shop. By 2006 or 2007, Gilliland had transitioned the business to function solely as the Old Fashion Candy Store.

In January 2010, A.A. (Father) opened an office for his mortgage company in the rental space located above Gilliland's candy store. Father and J.A. (Mother) worked out of the rented space and soon befriended and grew to trust Gilliland. Four of their five children, F.A., O.A., A.A., and A.J.A., would spend quite a bit of time at the office because their school was located a few blocks away. The children "spent a lot of time downstairs in the candy shop." *Transcript* at 315. F.A. took a particular interest in "hanging out and talking" with Gilliland. *Id*. at 316. When F.A. was ten years old, she began helping out

at the candy shop several days a week. Gilliland eventually paid F.A. two dollars an hour for restocking candy, working the cash register, and helping customers. F.A. testified that she trusted Gilliland and described him as being "like a grandfather" to her. *Id*. at 401.

[5] F.A. and her sisters also spent time with Gilliland outside of the candy store. In January 2011, Father became ill and had to be hospitalized. Gilliland offered to have the three girls, F.A., O.A., and A.A., stay with him in his home for a few nights so Mother could stay at the hospital. At the time, F.A. was ten years old, O.A. was nine years old, and A.A. was eight years old. F.A. and A.A. slept in Gilliland's guest bedroom while O.A. slept downstairs on the couch. F.A. spent the night at Gilliland's home on two other occasions.

[6] On one occasion, Gilliland told F.A. to go upstairs to the guest bedroom and undress to her bra and underwear because he was going to clean her up. Gilliland told F.A. that he had been trained to clean up people and that he had done so when he was in Vietnam. Gilliland asked F.A. to lie on the floor on her back with her knees propped up. He told her that she needed to lie still and that she "need[s] to be healthy because only good girls get to be healthy." *Id*. at 418. He then removed her underwear and used a wet washcloth to wipe her chest area. Gilliland then proceeded to wipe F.A.'s vaginal area and inserted his finger in and out of her vagina. He did not wash any other areas of her body. F.A. testified that Gilliland's actions hurt her and made her feel "very uncomfortable" and "confused". *Id*. at 417, 420. F.A. observed blood on the washcloth Gilliland used to wipe her vagina. After the incident, Gilliland

offered F.A. snacks and a drink and asked her if she wanted to watch a movie. Gilliland engaged in similar behavior with F.A. a total of three to four times. On perhaps as many as two occasions, Gilliland brought a video camera and faced it toward F.A.'s vaginal area as he engaged in this conduct.

[7] F.A. also described incidents when Gilliland "play wrestled" with her while she was in her underwear. He would tickle her upper thigh, near her vagina. Gilliland had an erection while doing this. On another occasion, Gilliland had the girls watch a movie with him that contained a sexual scene in which the actress was clothed in an outfit comprised of blinking lights over her breasts and private area. Gilliland told the girls he should buy outfits like that for them.

[8] On another occasion, Gilliland took F.A. and her sisters to his son's farm where the three girls swam in a pond, went fishing, and played with puppies. Before leaving the farm, Gilliland checked the girls for fleas. He pulled A.A. aside and lifted her shirt so he could examine her chest area. He then pulled down her shorts and underwear, exposing her "no-no square," which is the term she uses for her "private area." *Transcript* at 560, 559. Gilliland "pulled [A.A.'s vagina] apart," looked at it, and moved his hands around it. *Id*. at 560. He did not check any other parts of A.A.'s body.

[9] After leaving the farm Gilliland took the girls back to his home, where he told F.A. that he needed to more thoroughly check her for fleas. He directed F.A. to go to the guest bedroom, get out of her clothes, and lie on the floor just as she had on previous occasions. Gilliland then spread F.A.'s legs apart, looked in

her vaginal area, and poked and prodded inside her vagina with his fingers.  He did not check any other parts of her body for fleas.  After he was done, he instructed F.A. to shower and get dressed.  Gilliland then called F.A.'s sister, A.A., into the guest bedroom.  As A.A. entered, F.A. told her that Gilliland was "checking for fleas." *Transcript* at 431.

[10]  During another night when the girls stayed at Gilliland's home, A.A. wet the bed.  A.A. told Gilliland about it, and he took her into the guest bedroom and had her remove her clothing.  He then instructed A.A. to lie on the bed with her legs spread apart so he could wipe her vagina with a wet washcloth.  A.A. explained that Gilliland kept rubbing the inside and outside of her vagina, making her feel "[a]wkward and uncomfortable." *Id*. at 569.  Gilliland told A.A., "Don't be loud," and wiped her chest with the washcloth as well.  *Id*.

[11]  In April 2012, Father and Mother divorced and Father moved his office into his home.  The children stopped going to Gilliland's candy store on a regular basis, but F.A. continued to work for Gilliland until about May 2012.  In early 2014 F.A. began having trouble sleeping and started having nightmares.  She became angry and sad and started cutting herself.  In May 2014, F.A. disclosed to her parents what Gilliland had done to her.  In July 2014, F.A. attempted suicide by taking an overdose of Adderall and Prozac.  F.A. thought she was "nasty and dirty and disgusting" and thought her parents would be ashamed of her because of what Gilliland had done.  *Id*. at 458.

[12] After the suicide attempt, F.A. was placed in intensive inpatient therapy where she talked about what had happened to her. A.A. subsequently disclosed what Gilliland had done to her as well. The Madison County Sheriff's Department initiated an investigation, which included executing a search warrant at Gilliland's home. Officers found a video recording device in the guest bedroom that F.A. later identified as being the device he used to record his actions toward her. The recording device contained a deleted, close-up video of a two to four year old girl spreading her vagina with her hands. The girl was not F.A. or A.A.

[13] Gilliland was subsequently arrested and on December 29, 2014, the State charged him with Count I, Class A felony child molesting; Counts II and III, Class C felony child molesting; Count IV, Class C felony child exploitation; Count V, Class D felony possession of child pornography; and Count VI, Level 6 felony possession of child pornography. A four-day jury trial commenced on July 21, 2015. The jury found Gilliland guilty of Counts I, II, and III and not guilty of Counts IV and V.[1] The trial court held a sentencing hearing on August 17, 2015. During the sentencing hearing, M.D., Gilliland's adult daughter,[2] testified that when she heard the allegations against Gilliland, she spoke with detectives and told them that Gilliland did the exact same things to her when she was a child. M.D. detailed that between the ages of nine and thirteen,

---

[1] The State dismissed Count VI prior to trial.

[2] During her testimony at the sentencing hearing, M.D. stated that she was forty years old.

Gilliland wiped her down with a washcloth and placed his fingers inside her vagina.

[14] In addressing the evidence presented during the sentencing hearing, the trial court noted, "with respect to the defendant's daughter, the evidence does support a conclusion that he had also abused her in a similar fashion." *Transcript* at 1102. Prior to pronouncing the sentence, the trial court made the following statement:

> In terms of the formal finding of aggravation and mitigation the court does find aggravation as noted by the probation department in that multiple counts were committed here, and there were multiple victims. And it is certainly true here that the defendant violated a position of trust by committing these offenses. The defendant was a very good close long term friend of the [A.] family and in fact to the extent that [Father] suffered a medical crisis and the family was in crisis and needed someone to help out with the children, it was to Mr. Gilliland that they turned. That's how much they trusted him. And he did take advantage of that trust and commit the offenses that happened here. And while the defendant does not have a history of criminal convictions, the court does find that it is an aggravating circumstance that he did offend in a similar manner against his daughter. Weight against that aggravation the court notes that the defendant, again, gave to his community, he gave to his church, and was very actively involved in church activities and with helping other people in that capacity. And it's also a mitigator that he did serve his country honorably in the military. I do find, in comparing the relative weight of the aggravation and mitigation, that the aggravation does outweigh the mitigation.

*Transcript* at 1104-05. The trial court then sentenced Gilliland to thirty-five years on Count I and five years each on Counts II and III. The trial court ordered Counts I and III (referring to F.A. as the victim) to be served concurrently with each other but consecutive to Count II (referring to A.A. as the victim), resulting in an aggregate sentence of forty years incarceration. Additional facts will be provided where necessary.

## Discussion & Decision

## Abuse of Discretion

[15]     Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. at 490-91. A trial court may be found to have abused its discretion by (1) failing to enter a sentencing statement; (2) entering a sentencing statement that includes reasons not supported by the record; (3) entering a sentencing statement that omits reasons clearly supported by the record and advanced for consideration; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id*. at 490-91. Because a court may impose any sentence authorized by statute "regardless of the presence or absence of aggravating circumstances or mitigating circumstances," a trial court is no longer obligated to weigh aggravating and

mitigating factors against each other when imposing a sentence. *See Richardson v. State*, 906 N.E.2d 241, 243 (Ind. Ct. App. 2009) (citing *Anglemyer*, 868 N.E.2d at 490-91).

[16] Gilliland argues that the trial court abused its discretion in identifying and considering as an aggravating circumstance uncharged criminal conduct with respect to his daughter.

[17] "Allegations of prior criminal activity need not be reduced to conviction before they may be properly considered as aggravating circumstances by a sentencing court." *Harlan v. State*, 971 N.E.2d 163, 170 (Ind. Ct. App. 2012) (citing *Beason v. State*, 690 N.E.2d 277, 281 (Ind. 1998)). Indeed, our Supreme Court has specifically held that a trial court does not abuse its discretion in sentencing when it considers allegations of prior sexual abuse as an aggravating circumstance. *See Carter v. State*, 711 N.E.2d 835, 840 (Ind. 1999) (concluding that the trial court did not abuse its discretion when it identified defendant's attempted molestation of his sister as an aggravating circumstance). In the case of prior uncharged crimes of sexual abuse, the rationale is "that prior uncharged crimes of that nature reliably indicate a high probability that the defendant will commit similar crimes in the future." *Russelburg v. State*, 529 N.E.2d 1193, 1197 (Ind. 1988). Furthermore, evidence of uncharged crimes is relevant to the issue of the defendant's past and his character. *See Kent v. State*, 675 N.E.2d 332, 340-41 (Ind. 1996) (letters from women who knew defendant and reported that he had been physically abusive to them in the past could be considered at sentencing hearing on issue of defendant's past and his character).

[18] Testimony from M.D., Gilliland's adult daughter, that Gilliland had molested her from the time she was nine years old until thirteen years old was a proper aggravating circumstance. Her testimony was particularly significant because Gilliland molested M.D. in the same manner that he molested F.A. and A.A. As he had with F.A. and A.A., Gilliland wiped M.D. down with a washcloth and inserted his fingers inside her vagina. The pre-sentence investigation report indicates that M.D. contacted detectives and reported the molestation when Gilliland was first arrested. Under these circumstances, the trial court was well within its discretion to credit M.D.'s testimony and to consider such in sentencing Gilliland.

[19] Gilliland's reliance on *Tunstill v. State*, 568 N.E.2d 539, 544-46 (Ind. 1991), in support of his argument that his molestation of his daughter was an improper aggravating circumstance is misplaced. In *Tunstill*, the Court held that if a trial court identifies a defendant's criminal history as an aggravating circumstance, the criminal history must be supported by a history of conviction, the defendant's admission, or properly admitted trial evidence. The Court specifically noted that "[a] record of arrest, without more, does not establish the historical fact that the defendant committed a criminal offense on a previous occasion such that it may be properly considered as evidence that the defendant has a history of criminal activity." *Id*. at 544. Here, the trial court specifically noted that Gilliland did not have a history of criminal convictions. The court thus did not consider his molestation of his daughter as part of his criminal history, but rather as a nonstatutory aggravating factor. *See Singer v. State*, 674

N.E.2d 11, 14-15 (Ind. Ct. App. 1996) (concluding that the trial court did not abuse its discretion during sentencing by citing as an aggravating factor Singer's uncharged acts of violence against his children). Thus, *Tunstill* does not support Gilliland's position that the trial court abused its discretion in considering uncharged crimes of sexual abuse against his own daughter.

## Inappropriate Sentence

[20] Gilliland argues that his aggregate forty-year sentence is inappropriate. Despite the fact that the trial court imposed a sentence that is authorized by statute, we may revise Gilliland's sentence if, "after due consideration of the trial court's decision, [we] find that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Ultimately, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Thus, "whether we regard a sentence as appropriate ... turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. In making this determination, the relevant considerations are the length of the aggregate sentence and how it is to be served. *Id*. Gilliland bears the burden of persuading our court that his sentence is inappropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[21]     We first consider the nature of the offense.  Over the course of two years, Gilliland molested two innocent children who were entrusted to his care by their parents.  F.A. and A.A. were only ten years old and eight years old when the molestation began.  The girls trusted him and described him as being like their grandfather.  Gilliland abused this trust and used his position of power over them to inappropriately touch each of them on several occasions. Gilliland ensured that the girls would not disclose what was happening to them by making them feel as though his conduct was normal, using the ruse that he was cleaning them or looking for fleas.

[22]     With regard to the character of the offender, we note, as did the trial court, that Gilliland abused a position of trust he held with Father and Mother and with F.A. and A.A.  Further, Gilliland molested F.A. three to four times and A.A. at least twice and yet, he was charged and sentenced for three offenses.  His conduct toward these two young victims, as well as his conduct toward his own daughter many years prior, demonstrates a pattern of ongoing criminal conduct against some of the most vulnerable individuals in our society—individuals over whom he held a position of trust, care, and responsibility.  Although Gilliland has no formal criminal history, served his country, and gives to his community and his church, none of these aspects of his character prevented him from repeatedly molesting two young girls entrusted to his care as well as his own daughter.

Here, Gilliland received a thirty-five year sentence for Count I, Class A felony[3] child molesting, and five years each for Counts II and III, Class C felony[4] child molesting. The sentences for the offenses involving F.A. (Counts I and III) are to be served concurrently. To account for the multiple victims involved, the sentence on Count II is to be served consecutively to Counts I and III, resulting in an aggregate forty-year sentence. Having reviewed the record, we cannot say that Gilliland's sentence is inappropriate.

Judgment affirmed.

Bailey, J. and Bradford, J., concur.

---

[3] "A person who commits a Class A felony shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years." Ind. Code § 35-50-2-4.

[4] "A person who commits a Class C felony shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." I.C. § 35-50-2-6.