## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 21 2017, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

T. Alexander Newman
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John C. McClafferty,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

February 21, 2017

Court of Appeals Case No.
48A04-1609-CR-2086

Appeal from the Madison Circuit Court

The Honorable David A. Happe, Judge

Trial Court Cause No. 48C04-1509-FC-1610

**Brown, Judge.**

[1] John C. McClafferty appeals his sentence for attempted child exploitation as a class C felony, possession of child pornography as a class D felony, and contributing to the delinquency of a minor as a class A misdemeanor. McClafferty raises one issue which we revise and restate as whether the trial court abused its discretion in sentencing him. We affirm.

*Facts and Procedural History*

[2] McClafferty, born November 19, 1967, volunteered at the Muncie OUTreach program[1] at the Unitarian Church and signed an agreement that forbade him from texting or contacting the children in the program. On April 18, 2014, a juvenile's mother "called and said that the high school staff had called and told her that her son was absent from school." Transcript at 27. Indiana State Police Troopers obtained surveillance video of the juvenile being dropped off at school in the morning, going back outside, and entering a car later determined to belong to McClafferty. The police located McClafferty's car and the juvenile at a motel in Anderson. A trooper observed McClafferty and the juvenile carrying luggage and walking towards a motel room. McClafferty's luggage contained condoms, lubrication, whiskey, and a cooler of ice and soda pop. McClafferty also had a cell phone, a laptop, and a digital camera with him, and consented to a search of those devices. The juvenile "in this case had turned sixteen (16) just weeks before on March the 30th." *Id.* at 28. The juvenile

---

[1] The presentence investigation report indicates that "OUTreach is a Lesbian-Gay-Transgender-Queer youth group which meets at Unitarian Church" and was a program created "to give LGBT youth a safe space to be themselves." Appellant's Appendix at 29-30.

indicated that there were nude pictures of himself that he sent to McClafferty, that McClafferty also sent some to him, and that McClafferty touched him on the way to the motel that afternoon. Later investigation revealed that there was a photograph of the victim prior to turning sixteen on McClafferty's electronic devices.

[3] McClafferty indicated that he met the juvenile on Craigslist and admitted knowing that the juvenile was fifteen at the time. He allowed the detective to open his text messages, and there were several sexually explicit messages. Indiana State Police Sergeant Bunner identified eleven nude pictures of the sixteen-year-old juvenile on McClafferty's computer and at least one of them was sent on March 24th while the juvenile was still fifteen years old.

[4] On September 30, 2015, the State charged McClafferty with: Count I, attempted child exploitation as a class C felony; Count II, possession of child pornography as a class D felony; and Count III, contributing to the delinquency of a minor as a class A misdemeanor.

[5] On June 27, 2016, McClafferty pled guilty as charged and "open to the Court to those counts." *Id.* at 23. The court accepted McClafferty's guilty plea and scheduled a sentencing hearing.

[6] On August 8, 2016, the court held a sentencing hearing. Indiana State Police Detective Robert Allen May testified that he checked Facebook after McClafferty was arrested and released on bond and he "had a lengthy history on Facebook, Craiglist OkCupid of looking for young boys." *Id.* at 37. When

asked what kinds of things he found on McClafferty's computer and cell phone, Detective May answered:

> I think there was at least ten (10) different teenage boys naked. I don't think – I don't know if they were prepubescent, but they were hairless. They could've – they were – they were very muscular, so I couldn't tell if they were under the age of sixteen (16) or seventeen (17) or eighteen (18), but they were mostly clean shaven. There was one adult male that he was performing oral sex with and receiving.

*Id.* at 38. McClafferty's counsel objected to the relevance, and, after some discussion, the trial court overruled the objection and stated: "When you've got a case where a person has been engaging in illegal sexual conduct with a minor and he's using pornography which depicts people who appear in appearance at least to be young men then that's very relevant to the Court's conditions of sentence and probation." *Id.* at 39. Detective May referred to communications on Craigslist and when asked whether a certain communication was between McClafferty and the victim in this case, Detective May answered that "[i]t might've been [C.] or some other people, too," and "I can't recall exactly there were so many." *Id.* at 40. On cross-examination, Detective May testified that there was no solicitation specifically requesting that underage men contact him on Craigslist and other social media matters that he viewed.

[7] McClafferty stated:

> [W]hen I first started out my intentions were good to do the right thing and then made some bad choices, which is obvious. And my time sitting in jail I've had time to think about those, and,

overall, um, I hope you see the good in me, what I have been able – what I have been able to do. And I do have goals in the future that I'd like to pursue. And, basically, to wrap it up, I do have remorse for the victim, and I do wish that he can put this behind him and move forward in his life.

*Id.* at 44.

[8]     The court stated:

The Court is going to find that there is aggravation and mitigation present on the record. Aggravation, as stated by probation, is that [McClafferty] does have a history of significant criminal and delinquent and multiple felony and misdemeanor convictions. By my count, I believe these would be his third and fourth felony convictions. Although that probably misrepresents the seriousness of his criminal history in some way because he did have the benefit of several charges being reduced. And the types of charges are victim offenses, theft, auto theft, . . . arson. There's also a handgun case in there. Of course, it's a significant aggravator here that [McClafferty] did violate a position of trust and used his position as a person trusted within this program for young people to groom and manipulate one of the participants there in to having sexual activity for the defendant's gratification. And that was a calculated act. It was not a rash, impulsive type of act. He planned ahead, had intoxicants and sexual aids there to enable that to happen. This was something he put some thought in to and a plan he had that he carried out. It's further aggravation that there were multiple counts that are being sentenced here at the same time. There is mitigation present on the record, as well. [McClafferty] has pled guilty and accepted responsibility. He did express some measure of remorse. I do find the aggravation strongly outweighs the mitigation. Independent from aggravation and mitigation, the Court also considers the risk assessments that were conducted, both the IRAS which scored a moderate and the Static-99 which scored a

high. Weighing those things out, the Court does find here that community supervision would not be appropriate, a presumptive sentence would not be appropriate. I find, after balancing the aggravation and mitigation here and considering the harm that [McClafferty] inflicted on the victim, as well as the risk of future harm, and the fact that [McClafferty] is in need of rehabilitative services best provided in the Department of Corrections, I find that the appropriate sentence is as follows: For Count I, [McClafferty will be sentenced to eight (8) years, Count II, two (2) years, Count III, 365 days.

*Id.* at 49-50. The court ordered that the sentences for Counts II and III be served concurrent with each other and consecutive to Count I for an aggregate sentence of ten years.

### Discussion

[9] The issue is whether the trial court abused its discretion in sentencing McClafferty. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence— including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

[10] McClafferty argues that the trial court improperly concluded his criminal history was more severe than what was indicated in the presentence investigation report by rationalizing that he had the benefit of several charges being reduced. He contends that, when the trial court relied on a presumption that the seriousness of his criminal acts was more severe than what was available in the record, it explained reasons for imposing the sentence that are not supported by the record.[2]

[11] The State argues that the court properly identified McClafferty's criminal history as an aggravating circumstance. It contends that McClafferty's contention that the trial court improperly concluded his criminal history was

---

[2] In his conclusion, McClafferty states: "Further, McClafferty contends that his ten (10) year executed sentence at the Indiana Department of Correction was inappropriate in light of the reported seriousness of the Defendant's criminal convictions." Appellant's Brief at 13. McClafferty does not cite to Ind. Appellate Rule 7(B), which provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." McClafferty does not develop an argument regarding either the nature of his offenses or his character, and instead focuses on the validity of one of the aggravating circumstances identified by the trial court. We find that McClafferty has waived his argument that his sentence is inappropriate. *See Gentry v. State*, 835 N.E.2d 569, 575-576 (Ind. Ct. App. 2005) (holding that the defendant's "failure to offer more than a mere conclusory statement that his sentence should be reduced waives his opportunity for appellate review") (footnote omitted).

more severe than was indicated is without merit, that the trial court did not make a presumption because it did not need to in light of the record before it, and that McClafferty's argument is an improper request for this court to reweigh the seriousness of McClafferty's criminal history as an aggravator.

[12] The Indiana Supreme Court has described when and how a defendant's arrest record may be used in sentencing:

> A long line of cases from this Court holds that allegations of prior criminal activity need not be reduced to conviction before they may be properly considered as aggravating circumstances by a sentencing court. *Creasy v. State* (1988), Ind., 518 N.E.2d 785 (one pending charge, four arrests); *Dillon v. State* (1986), Ind., 492 N.E.2d 661 (pending felony charges); *McNew v. State* (1979), 271 Ind. 214, 391 N.E.2d 607 (long record of arrests). The court must, however, place this type of information in the proper context when considering it and determining its relative weight. A record of arrests cannot be considered as an aggravator under I.C. 35-38-1-7(b)(2)[repealed, similar provision at Ind. Code § 35-38-1-7.1(a)(2)] because it does not reveal to the sentencing court that the defendant has engaged in the kind of behavior which the legislature identified as an aggravator in that subsection. I.C. 35-38-1-7(d) [repealed, similar provision at Ind. Code § 35-38-1-7.1(c)[3]], however, gives a sentencing court the flexibility to consider any factor which reflects on the defendant's character,

---

[3] In *Tunstill*, the Court observed that at the time of the defendant's sentencing, Ind. Code § 35-38-1-7, which was repealed in 1990 and replaced with Ind. Code § 35-38-1-7.1, stated in subsection (b) that the trial court could consider whether the defendant "ha[d] a history of criminal or delinquent activity," and subsection (d) provided that "the criteria listed in subsections (b) and (c) do not limit the matters that the court may consider in determining the sentence." 568 N.E.2d at 544-545. At the time of McClafferty's sentencing, Ind. Code § 35-38-1-7.1(a)(2) provided that a trial court may consider whether "[t]he person has a history of criminal or delinquent behavior," and Ind. Code § 35-38-1-7.1(c) provided that "[t]he criteria listed in subsections (a) and (b) do not limit the matters that the court may consider in determining the sentence."

good or bad, in addition to those expressly set out in the rest of the statute when determining the appropriate sentence to impose on that defendant. It is in this category that a record of arrests is properly considered. While a record of arrests does not establish the historical fact of prior criminal behavior, such a record does reveal to the court that subsequent antisocial behavior on the part of the defendant has not been deterred even after having been subject to the police authority of the State and made aware of its oversight of the activities of its citizens. This information is relevant to the court's assessment of the defendant's character and the risk that he will commit another crime and is therefore properly considered by a court in determining sentence. I.C. 35-38-1-7(a)(1) and (a)(3)(B) [repealed, similar provisions at Ind. Code § 35-38-1-7.1(b)(8), (c)]. *See also Willoughby v. State* (1990), Ind., 552 N.E.2d 462, 471 (DeBruler, J., concurring and dissenting); *Chamness v. State* (1983), Ind., 447 N.E.2d 1086, 1088 (DeBruler, J., concurring in result).

*Tunstill v. State*, 568 N.E.2d 539, 544-545 (Ind. 1991).

[13]   The presentence investigation report ("PSI") reveals that some charges were either dismissed pursuant to guilty pleas or the disposition is unknown, but it also reveals that McClafferty has multiple convictions and that the trial court's statement that the present convictions would include his third and fourth felony convictions is accurate. As a juvenile, McClafferty was alleged to have committed auto theft, reckless driving, "Leaving Scene of Property Damage Accident," "No Operator's License," and fleeing in 1981, and was placed on formal probation. Appellant's Appendix at 24. In 1985, he was alleged to have committed "Burglary/School," and the PSI indicates that the disposition is unknown. *Id.* at 25. As an adult, McClafferty was charged with receiving

stolen property as a class D felony and contributing to the delinquency of a minor in 1989, and the PSI indicates that the disposition is unknown. In 1992, McClafferty was convicted of carrying a handgun without a license as a class A misdemeanor. McClafferty was also convicted of auto theft as a class D felony, his sentence was suspended, and he later admitted the allegations in a petition for revocation. In 1993, McClafferty was charged with theft as a class D felony and criminal conversion as a class A misdemeanor and pled guilty to criminal conversion as a class A misdemeanor. In 1994, the State charged McClafferty with four counts of receiving stolen property as class D felonies, he pled guilty to theft as a class A misdemeanor, and the three remaining counts were dismissed. That same year, McClafferty pled guilty to arson as a class D felony. In 2007, McClafferty was charged with check deception as a class A misdemeanor, an agreement was entered to withhold prosecution, and the court ultimately granted the State's motion to dismiss.

[14] The trial court considered "the risk of future harm, and the fact that [McClafferty] is in need of rehabilitative services best provided in the Department of Corrections . . . ." Transcript at 50. Under *Tunstill* and Ind. Code § 35-38-1-7.1, the trial court could consider McClafferty's arrests when sentencing him as indicative of "subsequent antisocial behavior on the part of the defendant [that was not] deterred even after having been subject to the police authority of the State and made aware of its oversight of the activities of its citizens," his character, and the risk that he might commit another crime. *Tunstill*, 568 N.E.2d at 545. We also note that McClafferty does not challenge

the court's other aggravators.  Under the circumstances, we cannot say that the trial court abused its discretion in sentencing McClafferty.

## *Conclusion*

For the foregoing reasons, we affirm McClafferty's sentence.

Affirmed.

Vaidik, C.J., and Bradford, J., concur.